**MONROE STREET PROPERTIES, INC.,
an Arizona corporation, Appellant,**

v.

**Orville S. CARPENTER, Trustee, etc.,
Appellee.**

**No. 22228.**

United States Court of Appeals
Ninth Circuit.

Feb. 12, 1969.

Rehearing Denied March 19, 1969.

Allen B. Bickart (argued), of Kanne, Bickart & Crown, Phoenix, Ariz., for appellant.

Mark Wilmer (argued), of Snell & Wilmer, Phoenix, Ariz., for appellee.

Before JERTBERG, BROWNING, and HUFSTEDLER, Circuit Judges.

HUFSTEDLER, Circuit Judge:

Appellant, Monroe Street Properties, Inc. ("Monroe"), appeals from a judgment in favor of the defendant Carpenter entered after Carpenter's motion for a summary judgment was granted. Carpenter is a party in his capacity as a trustee for Western Equities, Inc. ("Western"). Federal jurisdiction is based upon diversity of citizenship.

Monroe's action is for claimed breach of a written contract between Monroe and Western in which Western agreed to buy from Monroe ten insured first mortgages and notes having a face value of $1,250,000 in exchange for $1,000,000 worth of Western's common stock. The District Court granted summary judgment on the ground that the uncontroverted facts showed that Monroe neither performed nor tendered performance on its side and, therefore, Western was not in breach of contract. Monroe contends that there was a genuine issue of material fact within the meaning of Rule 56 of the Federal Rules of Civil Procedure: Could Monroe have performed its agreement by delivering clear insured title to the first mortgages during the life of the contract? We reject Monroe's contention and affirm the judgment.

The following facts are undisputed. On March 27, 1962, Western submitted its written offer to Monroe to buy the ten first mortgages and notes. Monroe promptly accepted the offer. Western's offer was expressly subject to "verification by Union Title Company that the ten first mortgages * * *· are valid first mortgages." The offer further provided that Monroe would secure a policy of title insurance at its expense, would take the Western stock "as investment stock without plans for redistribution," and would execute voting proxies for the stock in favor of the Executive Committee of Western for three years. Western agreed to have the stock listed on the American Stock Exchange and to seek with due diligence registration of the stock with the Securities and Exchange Commission.

Pursuant to the contract the parties opened an escrow with Union Title Company on March 30, 1962. The escrow agreement provided that the terms and conditions of the agreement were to be complied with "on or before the date upon which [Western] stock has been listed on the American Stock Exchange, and delivered to Union Title Company." The Western stock was listed on the American Stock Exchange sometime before June 29, 1962, although the precise date of the listing is not clearly stated in the affidavits filed in connection with the motion for summary judgment. Monroe never deposited into escrow ten valid first mortgages or the policy of title, and Western never deposited its stock. Monroe did deposit the mortgage instruments in the escrow, but a preliminary title report received by Western on May 7, 1962, revealed that the properties subject to the ten mortgages were also subject to heavy prior encumbrances. After Monroe deposited those instruments in escrow, Monroe sent a demand to Western to deposit the stock. Western did not comply with the demand. Nothing further was done by either of the parties to perform the agreement and Monroe brought this action in October 1966.

According to the facts presented by Monroe in its own affidavits, which are uncontradicted in this respect by Western's affidavits, the only means by which Monroe could have delivered clear title to the first mortgages and could have obtained the policy of title insurance was to hypothecate Western stock to raise the money to pay off the prior encumbrances. Monroe had no ability or means to perform its part of the agreement unless Western deposited its stock in escrow before Monroe performed.

The District Court correctly decided that Monroe never made an adequate tender of its own performance. Monroe's duty to deposit the insured first mortgages and Western's duty to deposit its stock were concurrent conditions. (Wilhorn Builders, Inc. v. Cortaro Management Co. (1957), 82 Ariz. 48, 308 P.2d 251; Groobman v. Kirk (1958), 159 Cal.App.2d 117, 323 P.2d 867.) Neither party could place the other in breach for failure to perform without a tender of its own performance. "Tender" as used in this connection means " 'a readiness and willingness to perform in case of the *concurrent* performance by the other party, with present ability to do so, and notice to the other party of such readiness.' "

(Emphasis added. 6 Williston, Contracts (3d ed. 1962) § 833, p. 105.) Monroe's offer to perform its concurrent condition upon condition that Western perform first was not an adequate tender and could not be relied upon by Monroe to place Western in breach of contract.[1]

The judgment is affirmed.

---

1. The cases cited by Monroe do not assist it. The cases support the principle that a vendor's failure to have title to property, which is the subject of the sale, before the vendor's performance is due, is not a breach of contract by the vendor. (Walker v. Estavillo (1952), 73 Ariz. 211, 240 P.2d 173; Glad Tidings Church of America v. Hinkley (1951), 71 Ariz. 306, 226 P.2d 1016; Steward v. Sirrine (1928), 34 Ariz. 49, 267 P. 598; Backman et al. v. Park et al. (1910), 157 Cal. 607, 108 P. 686.) Monroe's problem is not to avoid a charge based on breach attributed to it, but to establish a breach by Western.