**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff–Appellant,**

**v.**

**NEW HAMPSHIRE INSURANCE COMPANY, Defendant–Appellee.**

No. 90–55865.

United States Court of Appeals, Ninth Circuit.

Argued Aug. 14, 1991.

Submitted Dec. 20, 1991.

Decided Dec. 30, 1991.

As Amended Feb. 25, 1992.

Eugene Comey, Tuttle & Taylor, Washington, D.C. (Mark S. Shipow and Paul Marks of Whitman & Ransom, Los Angeles, Cal., on brief and orally), for plaintiff-appellant.

Roswell Bottum, Bottum & Feliton, Los Angeles, Cal., for defendant-appellee.

Before WALLACE, Chief Judge, GOODWIN and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

The Federal Deposit Insurance Corporation (FDIC),[1] as the successor to the Federal Savings and Loan Insurance Corporation (FSLIC), appeals from the final judgment entered as a result of the order granting summary judgment in favor of New Hampshire Insurance Company (New Hampshire). FSLIC brought this action in its corporate capacity as the Receiver of Ramona Savings and Loan Association (Ramona), to recover losses sustained by Ramona as the result of dishonest or fraudulent acts committed by John L. Molinaro, Ramona's former president, director, and sole shareholder.

New Hampshire issued a fidelity bond in favor of Ramona. The fidelity provisions of the bond, set forth in Section A, provide that it covers "[l]oss resulting directly from dishonest or fraudulent acts of an Employee committed alone or in collusion with others." The terms "loss" and "Employee" are explained in separate sections under the general heading "Conditions and Limitations." The definition of an employee, set forth under "Definitions" in Section 1 of the "Conditions and Limitations," includes an officer of the institution.

Section 2 of the "Conditions and Limitations" is entitled "Exclusions." This section begins with the words: "This bond does not cover:" Thereafter, Section 2 expressly excludes, inter alia, coverage for monetary losses resulting from forgery or alteration, loss of customers' property in safe deposit boxes, and loss resulting from the use of credit or charge cards.

Section 4, under the heading "Discovery," provides as follows:

This bond applies to losses discovered by the Insured during the bond period. Discovery occurs when the insured becomes aware of facts which would cause a reasonable person to assume that a loss covered by the bond has been or will be incurred, even though the exact amount or details of loss may not be then known.

Notice to the insured of an actual or potential claim by a third party which alleges that the insured is liable under circumstances which if true would create a loss under this bond constitutes such discovery.

The district court granted summary judgment in favor of New Hampshire on alternate grounds. First, it concluded that, under the terms of the fidelity agreement, the insured had the burden of proving that it discovered losses during the period of time covered by the bond and failed to do so. Second, the district court ruled that even if the insured had met its burden of proving that its employee's dishonesty was discovered during the life of the agreement, recovery is barred because this action was filed more than two years following the expiration of coverage in violation of the 24–month limitation period set forth in Section 5.

We must decide a series of questions:

One. Was Molinaro an "employee" under the terms of the bond?

Two. Under the terms of the agreement, is discovery of an employee's dishonesty a limitation on coverage, or is it an exclusion from the scope of coverage?

Three. Assuming discovery of loss is a limitation on coverage, did the insured meet its burden of proving that there is a genuine issue of material fact regarding whether the insured discovered its employee's dishonesty before the policy was terminated?

Four. Assuming that discovery was made by the insured within the period of time covered by the policy, is recovery barred because this action was filed beyond the 24–month limitation period set forth in the agreement?

---

1. The notice of appeal filed on June 28, 1990, lists the Federal Savings and Loan Insurance Corporation (FSLIC) as the appellant in this matter. Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, Pub.L. 101–73, 103 Stat. 183 (1989) (FIR-REA), the Federal Deposit Insurance Corporation (FDIC), as the successor in interest to FSLIC in this action, is substituted as a party in place of FSLIC. FIRREA § 401(f)(2), reprinted at 12 U.S.C.A. § 1437 (repealed 1989) (Historical and Statutory Notes) (West Supp.1991).

Five. Is the six-year period for filing a contract action set forth in 12 U.S.C. § 1821(d)(14)(A)(i) retroactively applicable to this agreement?

We reverse because we conclude (1) that FSLIC met its burden of presenting evidence sufficient to demonstrate that there is a material issue of fact in dispute regarding whether an employee's dishonesty was discovered within the period covered by the bond, and (2) that the six-year statute of limitations applies to this matter. Because of our holding that this action is not barred by the 24–month limitation provision of the agreement on the filing of an action, we do not reach FDIC's contention that the California doctrine of equitable tolling is applicable under these facts.

## I

### JURISDICTION AND APPLICABLE LAW

■ Because this action was filed by FSLIC in its corporate capacity, the district court had original jurisdiction over it and it is "deemed to arise under the laws of the United States." 12 U.S.C. § 1730(k)(1)(B) (repealed 1989); 12 U.S.C.A. § 1819(b)(1); 28 U.S.C.A. § 1345. *See Taylor Trust v. Security Trust Fed. Sav. & Loan Assoc.*, 844 F.2d 337, 342 (6th Cir.1988) ("FSLIC has special status under federal substantive common law applicable under 12 U.S.C. § 1730(k)(1)"); *FSLIC v. Murray*, 853 F.2d 1251, 1254 (5th Cir.1988) (federal common law applies to FSLIC). Thus, federal law is applicable to the issues raised in this case. *Dewey v. Lutz*, 930 F.2d 597, 598 (8th Cir. 1991) ("Under the ... [FIRREA] suits to which the FDIC is party are generally deemed to arise under the laws of the United States and, as such, should be litigated in federal court.") *See also FDIC v. Bank of Am. Nat'l Trust & Sav. Assoc.*, 701 F.2d 831, 834 (9th Cir.) ("Where, as here, the FDIC is proceeding in its corporate capacity, federal law applies."), *cert. denied*, 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983).

■ The parties have not referred us to any federal decision or statute that sets forth the rule of decision that must be applied in interpreting the terms of a fidelity bond that limits recovery to losses discovered during the period of time prescribed in the agreement. Accordingly, "we 'are free to apply the traditional common law technique of decision and draw upon all the sources of the common law in cases such as the present.'" *Id.* at 834 (quoting *FDIC v. Meo*, 505 F.2d 790, 793 n. 4 (9th Cir.1974)). In fashioning the federal rule of decision we must apply in this case, we may adopt state law if it does not conflict with federal policies. *United States v. Pastos*, 781 F.2d 747, 751 (9th Cir.1986).

In *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018 (9th Cir.1989), we set forth the general principles of federal law that control the interpretation of a contract when the United States is a party to the agreement. *Id.* at 1032. We summarized these rules of construction in *Kennewick* as follows:

One. "A written contract must be read as a whole and every part interpreted with reference to the whole." *Id.* (quoting *Shakey's, Inc. v. Covalt*, 704 F.2d 426, 434 (9th Cir.1983)).

Two. "Preference must be given to reasonable interpretations as opposed to those that are unreasonable, or that would make the contract illusory." *Id.* (quoting, *Shakey's*, 704 F.2d at 434)).

Three. "The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous." *Id.* (quoting *International Union of Bricklayers & Allied Craftsmen Local No. 20 v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406 (9th Cir.1985)).

Four. "A contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation." *Id.* at 1032.

■ In the instant matter, FSLIC was not a party to the fidelity agreement. The contract was entered into by private parties. The parties urge us to apply California law pertaining to the interpretation of insurance contracts in determining whether

the insured or the insurer has the burden of proving whether Molinaro's dishonest acts were discovered during the policy period. The California authority cited to us on the interpretation of an insurance agreement is consistent with the federal rules of contract interpretation set forth above. Thus, an application of California law would not conflict with federal common law or create a lack of uniformity in the application of the law in similar cases involving the FDIC. Because Ramona was chartered as a Savings and Loan Association in California, we look to that state's decisional laws in interpreting the terms of the bond.

## II

### MOLINARO'S STATUS AS EMPLOYEE

■ New Hampshire contends that Molinaro was not an employee under the terms of the bond. Accordingly, New Hampshire argues that FSLIC may not recover under the fidelity bond for Molinaro's dishonest acts. New Hampshire relies on *Kerr v. Aetna Casualty & Sur. Co.,* 350 F.2d 146 (4th Cir.1965), and *United States Fidelity & Guar. Co. v. Three Garden Village Ltd. Partnership,* 77 Md.App. 640, 551 A.2d 881, *aff'd,* 318 Md. 98, 567 A.2d 85 (1989), for the proposition that "[a] sole shareholder such as Molinaro, who is also the Chairman of the Board and the Chief Executive Officer, is not covered as an 'employee' under a fidelity bond." New Hampshire's reliance on these decisions is misplaced.

In the matter *sub judice,* an employee is defined in Section 1(f)(1) of the fidelity bond as "an officer or other employee of the insured, while employed in, at, or by any of the Insured's offices or premises covered hereunder...." Molinaro was an officer of Ramona.

In *Kerr,* the bond defined "employees" as "officers, clerks and other natural persons in the service of the Insured ... whom the Insured has the right to govern and direct at all times in the performance of such service." 350 F.2d at 154. The bond in *United States Fidelity* defined an "employee" as "any natural person ... while in the regular service of the Insured

in the ordinary course of the Insured's business during the Policy Period and whom the Insured ... has the right to govern and direct in the performance of such service...." 551 A.2d at 885.

In *Kerr,* the court found that the insured had only a "theoretical and unrealistic right of control" over the persons who committed dishonest acts. 350 F.2d at 154. The court concluded in *Kerr* that the terms of the bond did not cover a sole stockholder. *Id.* In *United States Fidelity,* the court stated that in determining whether a person was an "employee" as the term was defined in the bond, "[t]he parties agree that our interpretation of the 'right to govern and control' contained in the definition is determinative to the resolution of that question." 551 A.2d at 885. Thus, in both of the cases relied upon by New Hampshire, the courts were concerned with a special limitation on the definition of the term "employee" not present in this matter. Molinaro, as an officer of Ramona, was an employee under the plain meaning of the broad definition of that term set forth in Section 1(f)(1) of the bond.

## III

### SCOPE OF COVERAGE—BURDEN OF PROOF OF DISCOVERY

■ FDIC contends that the provision of the agreement which states that the bond "applies to losses discovered by the Insured during the bond period" describes an *exclusion* from coverage. New Hampshire argues that the discovery section of the agreement defines the scope of coverage.

Both parties rely on *Merced Mutual Ins. Co. v. Mendez,* 213 Cal.App.3d 41, 261 Cal. Rptr. 273 (1989), as dispositive of this issue. Under California law "the burden is on the insured initially to prove an event is a claim within the scope of the basic coverage. The burden then shifts to the insurer to prove the claim falls within an exclusion." *Id.* at 47, 261 Cal.Rptr. 273 (citations omitted).

An appellate court "must independently interpret the language of the insurance contract." *Id.* at 45, 261 Cal.Rptr. 273.

The words used in an insurance agreement must be interpreted "according to the plain meaning which a layman would ordinarily attach to them." *Id.* at 47, 261 Cal.Rptr. 273. "Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Id.* (quoting *Reserve Ins. Co. v. Pisciotta,* 30 Cal.3d 800, 807, 640 P.2d 764, 180 Cal.Rptr. 628 (1982)).

We have reviewed the entire text of the agreement. We find no ambiguity concerning its coverage and exclusionary provisions. The policy provides coverage in Section A for losses resulting from dishonest or fraudulent acts of an employee. In Section 4, the policy limits coverage to "losses discovered by the Insured during the policy period." FDIC argues that we should construe this limitation as an exclusion from coverage that requires the insurer to prove that the dishonesty was not discovered by the insured ... during the policy period. This interpretation of the agreement ignores the fact that the bond contains a section that clearly labels the conduct that is excluded from the policy under the heading "Exclusions."

We are persuaded that a reasonable insured would not construe the language of the bond as requiring the *insurer* to prove facts within the personal knowledge of the insured, i.e., whether the losses were discovered within the period of time covered by the bond. "Ordinarily, a litigant does not have the burden of establishing facts peculiarly within the knowledge of the opposing party." *Browzin v. Catholic Univ. of Am.,* 527 F.2d 843, 849 (D.C.Cir.1975). We are persuaded that a reasonable insured would recognize that the proof of a negative is not generally required in a dispute over a business transaction. In short, we believe that a reasonable insured would construe the discovery provisions as a limitation on coverage.

## IV

### PROOF OF DISCOVERY OF LOSS WITHIN THE POLICY TIME LIMITS

New Hampshire issued its bond to Ramona on August 24, 1984. The Federal Home Loan Bank Board (Bank Board) declared that Ramona was insolvent on September 12, 1986. The Bank Board approved FSLIC as the receiver for Ramona. FSLIC took possession of Ramona on the same date.

For purposes of resolving the issues presented in this summary judgment matter, FDIC does not contest New Hampshire's assertion that the bond terminated on September 12, 1986.

After FSLIC assumed its duties as receiver, its agents discovered that Ramona may have suffered losses covered by the bond that had not been reported to New Hampshire. On October 23, 1986, FSLIC's counsel notified New Hampshire by telephone that losses covered by the bond had been discovered. On October 27, 1986, a letter was sent to New Hampshire confirming the prior verbal notice. On April 14, 1987, FSLIC sent a formal proof of loss to New Hampshire. The proof of loss described dishonest acts committed by John L. Molinaro in January of 1986, on February 3, 1986, and on April 2, 1986. The proof of loss alleged that each of these acts was discovered by FSLIC's attorneys after September 12, 1986. FSLIC's claims were denied by New Hampshire on November 5, 1987, on the basis that they were not discovered until after the termination of the bond on September 12, 1986. New Hampshire also denied FSLIC's claim for audit expenses in excess of $50,000 because these costs did not arise out of losses discovered during the term of the bond.

FSLIC filed its initial complaint on September 9, 1988. On December 15, 1988, FSLIC filed an amended complaint. New Hampshire answered the amended complaint on March 10, 1989.

FSLIC alleged in its amended complaint that the fidelity bond "covers losses discovered during the period of the Bond." The complaint also states that Ramona discovered at least four losses "[d]uring the period covered by the Bond." The complaint also asserts that these losses had not been reported "due to the misconduct and

wrongful concealment of officers and directors of Ramona." The amended complaint describes four acts of dishonesty committed during the term of the bond. The amended complaint also seeks recovery of expenses incurred as the result of an audit commenced "[o]n or about August, 1986."

New Hampshire filed a motion for summary judgment on June 26, 1989. In support of its motion, New Hampshire argued that, pursuant to FSLIC's proof of loss, the alleged losses were not discovered until after the term of the bond. In addition, New Hampshire contended that if any of the losses were discovered prior to September 9, 1986, they were barred by the 24–month limitation period for the filing of an action for breach of the agreement set forth in Section 5(d) of the bond. New Hampshire also asserted that the audit expenses were not covered by the bond because they did not relate to a loss discovered during the term of the bond.

New Hampshire's motion for summary judgment was supported by a copy of the fidelity bond, the proof of loss submitted by FSLIC, and a copy of an order in a separate proceeding in which the district court ruled that a similar savings and loan fidelity bond was automatically terminated upon takeover by a federal agency, without the necessity of written notice from the insured.

FSLIC filed an opposition to New Hampshire's motion for a summary judgment on July 24, 1989. In support of its opposition, FSLIC submitted declarations executed by Edwin W. Duncan and Marsh S. Lee, two of FSLIC's attorneys. Mr. Duncan alleged that the dates set forth in the proof of loss regarding the discovery of Molinaro's dishonest acts "do not reflect the date on which employees of Ramona may have discovered the subject losses." Mr. Lee alleged that he was monitoring a civil action brought by FSLIC against Molinaro and a criminal action brought against Molinaro and others.

Attached to Mr. Lee's affidavit, as Exhibit H, is a copy of the second superseding indictment in which John L. Molinaro and Donald P. Mangano, Sr., are charged with 30 counts of bank fraud, conspiracy to conceal dishonest acts to deceive the Bank Board, and two counts of making false entries in Ramona's records to deceive the Bank Board. The indictment sets forth a statement of facts concerning Molinaro's dishonest acts during the term of the policy based on testimony adduced by the grand jury during its investigation.

New Hampshire filed a written objection to portions of Mr. Lee's declaration and to Exhibits E, I, J, and L. No objection was made to the admission of Exhibit F, which includes the evidence introduced during summary judgment proceedings in the civil action against Molinaro, or to Exhibit H, the grand jury indictment. No reference was made to these exhibits during the hearing on New Hampshire's summary judgment motion conducted on August 28, 1989.

In its order granting New Hampshire's motion for a summary judgment, the district court stated: "FSLIC has presented no evidence on this point which raises a genuine issue of material fact as to the date of discovery." The district court also ruled that even if the losses were discovered before the termination of the policy, on September 9, 1986, this action was filed more than 24 months after that date.

During oral argument before this court, New Hampshire contended for the first time that the facts set forth in the grand jury indictment were inadmissible pursuant to Rule 56(e) of the Federal Rules of Civil Procedure.

Rule 56(e) provides in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Defects in evidence submitted in opposition to a motion for a summary judgment are waived "absent a motion to strike or other objection." *Scharf v. United States Attorney General*, 597 F.2d 1240, 1243 (9th Cir.

1979). *See Allen v. Scribner,* 812 F.2d 426, 435 n. 18 (9th Cir.) ("If a party fails to move to strike an affidavit that is allegedly defective under Rule 56(e), he waives any objection to it."), *amended,* 828 F.2d 1445 (9th Cir.1987). In *Scharf,* we reversed an order granting summary judgment because the trial court failed to consider the affidavit of a lay person which contained references to medical literature and set forth incompetent evidence of the affiant's opinion concerning the effect of disease on the accuracy of blood tests. 597 F.2d at 1242–43.

In *Eguia v. Tompkins,* 756 F.2d 1130 (5th Cir.1985), as in this matter, "unauthenticated excerpts" from court proceedings and an attorney's affidavit alleging that "the facts and allegations contained in the defendants' motion for summary judgment were true and correct" were submitted by the moving party. *Id.* at 1135. The Fifth Circuit held that "[d]ocuments presented in support of a motion for summary judgment may be considered even though they do not comply with the requirements of Rule 56 if there is no objection to their use." *Id.* at 1136.

■ We review an order granting summary judgment independently, or *de novo,* without deference to the ruling of the district court. *FSLIC v. Molinaro,* 889 F.2d 899, 901 (9th Cir.1989). In fulfilling this duty, we must determine whether there is a genuine issue of material fact in dispute, after viewing the evidence in the light most favorable to the party opposing the motion. *Id.*

■ The Supreme Court instructed, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), that the nonmoving party need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." *Id.* at 324, 106 S.Ct. at 2553. The nonmoving party is required, however, to go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Because New Hampshire failed to object to the admission of Exhibits F and H, we may consider them in determining whether there is a genuine issue of material fact in dispute, notwithstanding the fact that this evidence was presented in a form that would not be admissible at trial.

■ The grand jury indictment recites specific facts showing that Ramona's employees. discovered that Molinaro committed the dishonest acts, alleged in the amended complaint, during the term of the bond. The portions of the testimony presented in support of the summary judgment motion, and the recitation of facts in the grand jury indictment, demonstrate that Ramona employees, including Norm Marks, the loan officer, and Geraldine Balogh, a director and employee, were aware of facts during the term of the bond that would cause a reasonable person to assume that Molinaro was committing dishonest acts. Accordingly, we conclude that FSLIC met its burden of demonstrating that there was a genuine issue of fact in dispute regarding whether Molinaro's dishonest acts were discovered within the term of the bond.

V

## APPLICABLE LIMITATION PERIOD

In an alternative holding, the district court concluded that "the two-year limitation period bars recovery under the Bond for losses discovered prior to September 6, 1986." Section 5(d) of the fidelity bond provides that "[l]egal proceedings for the recovery of any loss hereunder shall not be brought prior to the expiration of 60 days after the original proof of loss is filed with the Underwriter or after the expiration of 24 months from the discovery of such loss...."

FDIC argues that the fidelity bond's 24–month limitation on the filing of an action in this matter is not enforceable because of the enactment by Congress of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. 101–73, 103 Stat. 183 (1989). FIRREA became effective on August 9, 1989, after the district court entered its final order in this matter.

FIRREA provides for a six-year statute of limitations for the filing of any contract claim. 12 U.S.C. § 1821(d)(14)(A)(i). Section 1821(d)(14)(A)(i) provides as follows:

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—

(i) in the case of any contract claim, the longer of—

(I) the 6–year period beginning on the date the claim accrues; or

(II) the period applicable under state law.

■ This action was filed on September 8, 1988, well within the six-year statute of limitations for the claims alleged in the complaint. New Hampshire does not contend that FIRREA cannot be applied retroactively. Instead, New Hampshire asserts that section 1821(e)(12)(A) of FIRREA compels the receiver to enforce the limitation period in the fidelity bond. We disagree.

Section 1821(e)(12)(A) provides as follows:

The conservator or receiver may enforce any contract, other than a director's or officer's liability insurance contract or a depository institution bond, entered into by the depository institution notwithstanding any provision of the contract providing for termination, default, acceleration, or exercise of rights upon, or solely by reason of, insolvency on the appointment of a conservator or receiver.

Section 1821(e)(12)(A) permits a receiver to enforce any contract notwithstanding any provisions of the agreement that would affect its enforcement because of the appointment of a conservator or receiver. Section 1821(e)(12)(A) makes no reference to the enforceability of contractual provisions limiting the period in which an action may be filed. That subject is expressly addressed in section 1821(d)(14)(A)(i).

In *Bradley v. School Bd. of the City of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court held that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or

there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2015. In *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988), in a case involving the retroactivity of an administrative rule, the Supreme Court stated: "Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* at 208, 109 S.Ct. at 471. The *Georgetown* opinion did not cite *Bradley*. In *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990), the Supreme Court acknowledged that *Georgetown* and *Bradley* are "[i]n apparent tension...." *Id.* 110 S.Ct. at 1577. The Court concluded that it "need not in this case, however, reconcile the two lines of precedent represented by *Bradley, supra,* and *Georgetown, supra,* because under either view, where the congressional intent is clear, it governs." *Id.*

■ Our research has not disclosed a clear congressional intent that FIRREA's statute of limitations provisions apply only prospectively. *Cf. Federal Deposit Ins. Corp. v. Wright*, 942 F.2d 1089 (7th Cir. 1991) (noting that neither the Congressional committee reports, the floor debates, nor the court's research on FIRREA indicates that Congress intended FIRREA to apply only prospectively); *FDIC v. Dalba*, No. 89–C–712–S, 1990 WL 43750 at *3 (W.D.Wis. Feb. 27, 1990) ("Neither of the parties has presented the Court with any legislative history indicating a Congressional intent to apply the statute retroactively or prospectively. Neither has this Court's independent review of the legislative history of the [FIRREA] revealed such intent."). The district court in *FDIC v. Cherry, Bekaert & Holland*, 742 F.Supp. 612 (M.D.Fla. 1990), reviewed several statements quoted from the legislative history of FIRREA and concluded that "[it] is not convinced that Congress intended § 212(a) of FIRREA to apply retroactively to pending legislation." *Id.* at 615–16. In light of the statements in the legislative history emphasizing the policy of protecting the govern-

ment's right to recovery,[2] we conclude that the statutory text and legislative history of FIRREA do not clearly resolve the issue of the statute's retroactivity. Where, as here, there is no clear indication of congressional intent, and no "manifest injustice" will result, we conclude that retroactive application of section 1821(d)(14)(A)(i) to pending cases is appropriate. *See Bradley*, 416 U.S. at 711, 94 S.Ct. at 2015 (court applies the law in effect at the time it renders its decision unless "there is a statutory direction or legislative history to the contrary"); *Campbell v. United States*, 809 F.2d 563, 572 (9th Cir.1987) (presumption that law applies retroactively to pending cases may be displaced by "a fair indication that the statute, properly construed, has only prospective effect." (citation omitted)).

In this circuit, since the publication of *Georgetown*, we have recently applied *Bradley* to a statute changing the statute of limitations. *Gonzalez v. Aloha Airlines, Inc.*, 940 F.2d 1312, 1316 (9th Cir. 1991). In a well written opinion holding that the statute of limitations' provisions of FIRREA can be applied retroactively, the district court in *FDIC v. Howse*, 736 F.Supp. 1437 (S.D.Tex.1990), opined that *Bradley* applies to *substantive* changes in the law because retroactive changes could result in manifest injustice. *Id.* at 1446. The court concluded that since a statute of limitations is procedural in nature, it is accorded retroactive effect because it does not affect substantive rights.[3] *Id. Cf. FDIC v. Bancinsure*, 770 F.Supp. 496, 499 (D.Minn.1991) (holding that FIRREA's limitations period applies retroactively so long as retroactive application does not revive a

"stale" claim; claims are stale if the applicable limitations period expired prior to the FDIC's appointment as receiver). The analysis of the concept of limited retroaction in *FDIC v. Howse* is persuasive and consistent with the law of this circuit as applied in *Gonzalez.* Moreover, there is no clear indication that Congress intended that the statute of limitations apply only prospectively. *See Bradley*, 416 U.S. at 711, 94 S.Ct. at 2015.

New Hampshire has not demonstrated that retroactive application of the statute of limitations provisions of FIRREA to this matter would result in manifest injustice or violate congressional intent. To the contrary, as discussed above, New Hampshire has urged us to apply section 1821(e)(12)(A) of FIRREA to this matter. We conclude that section 1821(d)(14)(A)(i) is retroactively applicable to this action. Accordingly, FSLIC's claims were timely filed.

Because we have decided that this action was timely filed within the statutory six-year limitation period, we do not reach the question whether the district court erred in determining that the doctrine of equitable tolling is not applicable to this matter. In deciding that equitable tolling was not an available remedy in this matter, the district court relied on California Insurance Code section 533. Section 533 provides that an insurer is not liable for a "wilful act of the insured." The district court concluded that section 533 prevents a sole shareholder from profiting from his own wrongdoing.

The parties are in disagreement concerning whether Molinaro will receive any benefit if FDIC prevails in this action. We cannot resolve that dispute on the basis of

---

**2.** Senator Riegle, who introduced the bill into the Senate, stated during the hearings:

"[The statute of limitations provisions] are of the utmost importance. Extending these limitations periods will significantly increase the amount of money that can be recovered by the Federal Government through litigation ... The provisions should be construed to maximize potential recoveries by the Federal Government by preserving to the greatest extent permissible by law claims that would otherwise have been lost due to the expiration of hitherto applicable limitations periods." 135 Cong.Rec. S10205 (Daily Ed. Aug. 4, 1989).

**3.** FIRREA's conferees followed this reasoning in explaining why another limitations period provision, Section 905, which specifically provided for retroactive application, could be applied to misconduct that is discovered in the future. The conferees stated that "[t]his section does not create a new offense; it is procedural in nature, and can therefore be applied retroactively to yet undiscovered misconduct and to currently pending supervisory matters that have been stayed awaiting congressional action." Joint explanatory statement of the conference report on FIRREA, 135 Cong.Rec. H5292 (Daily Ed. Aug. 4, 1989).

the factual record presented to the district court in the summary judgment proceedings.

The district court appears to have concluded that its jurisdiction was based on diversity of citizenship. The court stated: "In diversity cases, a federal court must follow the substantive law of the state in which it sits." Thus, the district court may have considered itself bound to apply section 533 to this matter.

Upon remand, if requested by New Hampshire, the district court should consider whether California Insurance Code section 533 is consistent with federal common law and, if so, whether it is applicable, in light of our determination that the equitable remedy of tolling is not a viable issue in this case.

REVERSED.