42 F.3d 1400
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
KCS, INC., Plaintiff-Appellant,
v.
FEDERAL DEPOSIT INSURANCE CORP., et al., Defendants-Appellees.
 No. 93-15589.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 13, 1994.[1]
Decided Nov. 16, 1994.
 
 1
 Before: CHOY, NOONAN, Circuit Judges and MARQUEZ, District Judge.[2]
 
 MEMORANDUM[3]
 
 2
 Appellant KCS, Inc. (KCS), a Texas corporation, appeals the district court's ruling in favor of Appellees, Nevada Title Company (Nevada Title) and the Federal Deposit Insurance Corporation (FDIC).[4] KCS sued the FDIC and Nevada Title for breach of contract, seeking to recover $860,000 deposited as part of a failed escrow for purchase of raw land. Following a four-day bench trial, the district court found that KCS's failure to tender the purchase price violated the agreement and forfeited the deposited funds. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 
 3
 It is uncontested that on June 16, 1989, the parties entered into an Agreement to Purchase and Sell real estate in Clark County, Nevada for $2,650,000 and that Nevada Title was designated to act as the escrow agent for the transaction. Initially, $200,000 was deposited into the escrow account with a closing date of August 25, 1989. The trial court found that thereafter the parties repeatedly extended the closing date until April 25, 1990, the date both parties sent notices to Nevada Title cancelling the Purchase and Sale Agreement.
 
 
 4
 The significant events for purposes of this appeal began the first week in April, 1990. Barry McLaren, chief financial officer to Dr. Kenneth Scholz, principal shareholder and decision maker for KCS, contacted Karen Waldon, FDIC's representative. He inquired as to whether KCS might further extend from 90 to 120 days the existing April 13, 1990 closing date. Waldon refused the 90 to 120 day extension, but offered to extend the closing date for escrow to the 20 or 25 of April, if KCS provided a letter of commitment from a lending institution promising funding by those dates. On April 12, 1990, Waldon reiterated the limited offer to extend closing to April 20 or 25, and added that it might even be possible to go so far as April 30, 1990, if KCS could produce the requested letter.
 
 
 5
 On April 13, 1990, McLaren obtained a letter of commitment from Plains Bank and faxed it to Waldon at the FDIC. McLaren testified that he sent the confirmation letter in response to Waldon's offer to extend closing to April 20 or 25, and possibly April 30, 1990. However, when McLaren next spoke with Waldon, she informed him that to secure the April 30 extension, KCS would have to prepay interest for the extension, approximately $12,721.77. McLaren refused. Nevertheless, the FDIC memorialized the rejected offer in writing and sent it to KCS.
 
 
 6
 On April 24, 1990, when FDIC inquired as to the status of the April 30 extension, McLaren responded that KCS would not execute the written agreement which required the prepayment of interest because it believed that the FDIC could not deliver marketable title. KCS was referring to information from Nevada Title that it would not close escrow because of a law suit filed by Fred Victorson (the Victorson suit) alleging an interest in the KCS-FDIC transaction. Victorson served Nevada Title on April 12, 1990, and thereafter, on two occasions (April 13, 1990 and April 17, 1990), the escrow agent informed KCS that it could not close escrow because of the law suit. On April 25, 1990, the day after KCS told FDIC that it would not act to extend the escrow date to April 30, both parties instructed Nevada Title to cancel escrow.
 
 
 7
 Based on the above record, the district court found that the parties extended the closing date for escrow from April 13, 1990 through April 25, 1990; and thereafter, KCS breached the agreement when it failed to tender performance on April 25, 1990.
 
 
 8
 KCS challenges the court's finding that the parties agreed to the April 25 extension and argues that on April 13, 1990, escrow failed to close because Nevada Title refused to go forward after being served with the Victorson Complaint. Relying on principles of agency, KCS accuses the FDIC, acting through its agent Nevada Title, of repudiating the contract.
 
 
 9
 KCS argues in the alternative that if the parties agreed to extend the closing date to April 25, 1990, the trial court's conclusion that only KCS breached the agreement is contrary as a matter of law to the court's factual finding that the parties simultaneously cancelled escrow on that date. Finally, KCS charges that the trial court erred by refusing to consider KCS's argument for relief on the basis of unjust enrichment.
 
 
 10
 On review, this court considers a district court's conclusions of law de novo, In re Aslan, 909 F.2d 367, 370 (9th Cir.1990), and applies the same standard to a district court's interpretation of contractual provisions, Hawaiian Telephone Co. v. Microform Data Systems, 829 F.2d 919, 922 (9th Cir.1987). Findings of fact are reviewed under the clearly erroneous standard. Wardley Intern. Bank, Inc., v. Nasipit Bay Vessel, 841 F.2d 259, 261, n. 1 (9th Cir.1988). Despite the existence of conflicting or contradictory evidence, a finding of fact made by the trier of fact is not clearly erroneous if it is supported by substantial evidence.
 
 
 11
 Regarding the issue of whether the parties extended the escrow closing date beyond April 13, 1990, the record contains conflicting evidence which supports either conclusion. For example, the FDIC presented evidence that it did not honor verbal agreements and that on April 25, 1990, it cancelled the escrow because KCS failed to tender the purchase price on April 13, 1990. Arguably, the trial court might have concluded that the parties did not agree to extend escrow beyond April 13, 1990. On the other hand, Waldon orally agreed to extend the closing beyond April 13, 1990. KCS admitted at trial that its letter from Plains Bank attesting that KCS had obtained funding secured "an extension of sorts," perhaps not through April 30, but as the trial court found, at least to April 25, 1990. This is a classic example of a decision best left to the district judge; "[where] there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer, N.C., 470 U.S. 564, 574, 105 S.Ct. 1504, 1511 (1985).
 
 
 12
 Because this court affirms the district court's finding that the parties agreed to extend the closing date beyond April 13, 1990, it is not necessary to reach KCS's contention that the FDIC breached the agreement to close escrow on April 13, 1990 when its agent, Nevada Title, informed KCS that it would not close the escrow on that date because of the Victorson suit.
 
 
 13
 KCS argues that if this court finds the parties agreed to extend the closing date of escrow through April 25, 1990, the trial court wrongly concluded KCS was the sole party liable for breach because the trial court failed to recognize the legal significance of the simultaneous tender of a cancellation notice by the FDIC on that date. KCS submits that the correct legal conclusion must be that the parties jointly breached the closing deadline and thereby abandoned or rescinded by mutual consent their contract obligations. KCS concludes that the correct resolution of this case is to restore the parties to their pre-contract status. Gentry v. Smith, 487 F.2d 571, 578 (5th Cir.1973).
 
 
 14
 Alternatively, KCS argues that on April 24, 1990, the FDIC repudiated the Agreement when it advised KCS that it intended to cancel the escrow and forfeit KCS's money. KCS submits that the FDIC's repudiation of the Agreement excused KCS from performing and relieves KCS from all contract obligations. Kahle v. Kostiner, 85 Nev. 355, 358, 455 P.2d 42, 44 (1969).
 
 
 15
 The record fails to support either contention. On April 24, 1990, McLaren contacted Jim Hienton, Dr. Scholz's general legal counsel, and informed him that Savely of the FDIC had called several times regarding the status of the written agreement to prepay interest in consideration for extending closing to April 30, 1990. McLaren sought advice on how to proceed and Hienton instructed him to inform the FDIC that the Agreement had not been signed because KCS needed time to determine the significance of the Victorson suit. When McLaren relayed this information to Savely, Savely responded that the FDIC would cancel the escrow and move to forfeit KCS's deposits.
 
 
 16
 This statement by Savely, which KCS contends served to repudiate the contract, must be considered against the backdrop of KCS's April 13, 1990 representation to the FDIC that financing was expected from Plains Bank by April 30, 1990. This is not, as KCS suggests, a case where one party is excused from performance by the repudiation of the contract by the other party. Here, the FDIC tendered performance on April 3, 1990 when it deposited the necessary title documents into escrow with Nevada Title. FDIC cancelled the escrow after KCS failed to tender the purchase price on April 25, 1990 and refused to execute the further extension for closing escrow on April 30, 1990.
 
 
 17
 "Tender" as used in this connection means " 'a readiness and willingness to perform ..., with present ability to do so, and notice to the other party of such readiness.' " Monroe St. Properties, Inc. v. Carpenter, 407 F.2d 379, 380 (quoting 6 Walter J. Williston on Contracts Sec. 833, at 105 (3d ed. 1962)). The record contains substantial evidence supporting the trial court's finding that KCS never tendered performance, attempted to tender performance, or inquired as to whether a tender of performance would be rejected. KCS admitted having difficulty obtaining funding and turned to Plains Bank when original financing was not forthcoming. Document preparation for the Plains Bank loan began on April 18, 1990, and was never completed; the loan documents were never signed. Collateral for the loan was not delivered to the bank.
 
 
 18
 As a matter of law, KCS cannot charge breach or repudiation by the FDIC when KCS was not itself "ready, willing and able to perform." See, Monroe St. Properties, 407 F.2d at 379-80 (where parties hold concurrent obligations to tender performance, neither party can place the other in breach for nonperformance without being ready, willing and able to tender its own performance); Cf. Goldson v. AMI Investments, Inc., 98 Nev. 567, 569-70, 655 P.2d 521, 523-24 (1982) (prerequisite to seeking specific performance based on repudiation of agreement by other party is that the party seeking relief must be ready, willing and able to perform).
 
 
 19
 Lastly, this court affirms the trial court's omission of findings regarding KCS's claim of unjust enrichment against the FDIC. Such relief is not available where, as here, the terms of the express contract cover the subject matter in dispute. Swanson v. Levy, 509 F.2d 859, 861 (9th Cir.1975); Ewing v. Sargent, 87 Nev. 74, 79-80, 482 P.2d 819, 823 (1971); See e.g., Marshall v. Bare, 107 Idaho 201, 687 P.2d 591, 595 (App.1984) (no recovery for unjust enrichment where enforceable contract exists covering the same subject matter). Restitution is not available where parties defined their relationship by express contract; restitution is not a means for revisiting the parties' allocation of risk. Youngstown Welding v. Travelers Indem. Co., 802 F.2d 1164, 1169 (9th Cir.1986).
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit Rule 34-4
 
 
 [2]
 Honorable Alfredo C. Marquez, Senior U.S. District Judge for the District of Arizona, sitting by designation
 
 
 [3]
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [4]
 The original purchase agreement was between Regent Development Corp. (Regent), KCS's predecessor in interest, and the Federal Savings and Loan Insurance Corporation (FSLIC), predecessor in interest to the FDIC, acting as Receiver for Alliance Federal Savings and Loan. Where, as here, the FDIC proceeds in its corporate capacity, federal law applies. F.D.I.C. v. New Hampshire Ins. Co., 953 F.2d 478, 481 (9th Cir.1991). When neither federal statute nor common law sets forth the law of the case, which is the situation here, the court applies traditional common law principles and may look to the law of the state if it does not conflict with federal policies. Id. Therefore, this court applies the substantive law of Nevada as the federal rule of decision in this case