I. David PORRAS, a/k/a David C. Porras, Plaintiff–Appellant,

and

William H. Edmiston, Intervening Plaintiff–Appellant,

v.

PETROPLEX SAVINGS ASSOCIATION, et al., Defendants,

Olney Savings Association, Defendant–Appellee.

No. 89–1796.

United States Court of Appeals, Fifth Circuit.

June 14, 1990.

J. Michael Cunningham, Brockett, Cunningham & Bates, Midland, Tex., for plaintiff-appellant.

Franklin H. McCallum, Jr., Hinkle, Cox, Eaton, Coffield & Hensley, Midland, Tex., for defendant-appellee.

Before GOLDBERG, REAVLEY and HIGGINBOTHAM, Circuit Judges.

REAVLEY, Circuit Judge:

We affirm the judgment for Olney Savings Association on the ground that the *D'Oench, Duhme* doctrine, which protects the Federal Savings and Loan Insurance Corporation (FSLIC) from unwritten side agreements that tend to diminish the value of a facially valid instrument, continues that protection to a subsequent purchaser from the FSLIC of the assets of a failed institution.

## I.

In 1983 and 1984, appellant I. David Porras executed promissory notes to Petroplex Savings Association ("Petroplex"). The notes were secured by Deeds of Trust executed by Porras. Porras defaulted on the notes, and Petroplex foreclosed on certain tracts of realty pursuant to the Deeds. Following the foreclosures, a deficiency remained.

In May of 1987, Porras brought suit against Petroplex in state court claiming that the 1983 note was usurious. In June of 1988, appellant William H. Edmiston intervened claiming an interest in a portion of the real estate that secured the 1984 note.[1]

On October 14, 1988, the Federal Home Loan Bank Board declared Petroplex insolvent and appointed the FSLIC as receiver. On that same day, the FSLIC entered into an Acquisition Agreement with NuOlney Savings Association, the predecessor association of appellee Olney Savings and Loan Association ("Olney"), transferring all of the FSLIC's interests in various assets and

---

1. An injunction issued by the state court prevented Petroplex from foreclosing on the property in which intervenor Edmiston claimed an interest.

certain limited liabilities of Petroplex, including the notes and security documents executed by Porras. The FSLIC also intervened in Porras' state court action and removed the action to federal court. On appellants' motion, the district court joined Olney in the action. Thereafter, the FSLIC was dismissed from the suit.

In his amended complaint against Olney, Porras sought relief from his liability under the 1983 note on the ground that it was usurious.[2] Edmiston's plea in intervention sought to remove cloud and quiet title on part of the real estate securing the 1984 note.[3]

Olney counterclaimed seeking to recover on the two notes and to lift the injunction on the property securing the 1984 note. Olney then moved for summary judgment asserting that appellants' claims were barred by the *D'Oench, Duhme* estoppel defense and the defense of federal holder in due course. The trial court granted Olney's motion and ordered that Porras and Edmiston[4] take nothing by their suit.

Appellants argue that the district court erred in extending the protection of *D'Oench, Duhme* to a private enterprise, such as Olney. We disagree and affirm.

## II.

In *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), the Supreme Court wrote that the statute creating the FDIC "reveal[ed] a federal policy to protect [the FDIC] and the public funds which it administers against misrepresentations as to the ... assets in the portfolios of the banks which [the FDIC] insures or to which it makes loans." *Id.* 62 S.Ct. at 679. To ensure that this policy was advanced, the Court held that secret agreements that tend to deceive creditors or the public authority could not be raised as a defense against the FDIC in its corporate capacity when it seeks to enforce a note. *Id.* at 680–81; *Federal Sav. & Loan Ins. Corp. v. Murray*, 853 F.2d 1251, 1253–54 (5th Cir. 1988). In *Murray*, this court applied the *D'Oench, Duhme* doctrine to protect the FSLIC against secret agreements.

A primary duty of the FDIC and the FSLIC is to pay depositors of failed financial institutions. *See Gunter v. Hutcheson*, 674 F.2d 862, 865 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). The preferred method of ensuring that depositors are paid is through the use of purchase and assumption agreements. *See Federal Deposit Ins. Corp. v. Wood*, 758 F.2d 156, 160–61 (6th Cir.), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); *Gunter*, 674 F.2d at 865; *see also Murray*, 853 F.2d at

---

**2.** As to Porras' usury claim, the trial court wrote, in part:

> Porras claims: (1) that in addition to the 11% interest per annum floor on the note in question, a loan fee of $31,608.00 was charged by Petroplex; (2) Petroplex ... orally agreed to lend Porras an additional $3 million for interim construction financing; (3) he would not have ... borrowed from Petroplex absent [Petroplex's] oral representations; (4) the loan fee does not represent monies related to actual identifiable services rendered and therefore constitutes additional interest; (5) the interest contracted for when combined with the oral agreement to lend an additional $3 million and the subsequent profit on planned shopping center developments is usurious [under Texas law]; ... and (7) he is entitled to recover $892,496.14 of principal and interest paid on the usurious note.

*Porras v. Olney Sav. Ass'n*, No. Mo–88–CA–267, slip op. at 7–8 (W.D.Tex. Aug. 15, 1989) (citations omitted). On appeal, Porras does not contest this characterization of his claim.

**3.** As to Edmiston's claim, the trial court wrote:

> [i]ntervenor, William Edmiston, essentially claims: (1) that he purchased real property known as 2204 Western, Midland, Texas, in 1980 or 1981; (2) prior to a formal transfer of title in 1986, Porras held the subject property in trust for Edmiston; (3) Porras originally acquired the property in his [Porras'] own name on behalf of Intervenor; and (4) Petroplex acquired a security interest from Porras on this property through fraud, misrepresentation or mistake.

*Porras*, Mo–88–CA–267, slip op. at 11. Edmiston does not contest this characterization of his claim.

**4.** The court also noted that Edmiston accepted a Warranty Deed to the property in question from Porras in 1986. The "Warranty Deed expressly subjects the interest conveyed to Petroplex's lien interest." *Porras*, No. Mo–88–CA–267, slip op. at 11.

1256. Purchase and assumption agreements are preferred because they minimize the corporations' losses, expand the purchasing institutions' opportunities at low risk, and protect depositors. *See Wood,* 758 F.2d at 160–61; *Gunter,* 674 F.2d at 865–66. *D'Oench, Duhme* promotes purchase and assumption transactions by offering the purchaser protection from secret agreements that tend to affect adversely its rights in the instruments that it acquires. *See Federal Deposit Ins. Corp. v. Newhart,* 892 F.2d 47, 50 (8th Cir.1989). Extending *D'Oench, Duhme* to transferees of assets from the FSLIC, therefore, provides the FSLIC with greater opportunity to protect the failed institutions' assets.

Recognizing this, we recently extended *D'Oench, Duhme* to "*assignees* of the FDIC." *Bell & Murphy & Assocs. v. Interfirst Bank Gateway,* 894 F.2d 750, 754–55 (5th Cir.1990) (emphasis added). Although the assignee in *Bell & Murphy* was a *bridge bank* authorized by the FDIC to operate a failed bank, the policy behind *D'Oench, Duhme* applies with equal force where the purchaser is a private party, such as Olney. This court implicitly recognized as much in *Bell & Murphy* by citing with approval *Federal Deposit Ins. Corp. v. Newhart,* 713 F.Supp. 320 (W.D.Mo.), *aff'd,* 892 F.2d 47 (8th Cir.1989). *See Bell & Murphy,* 894 F.2d at 754 n. 5. In *Newhart,* the Eighth Circuit extended federal holder in due course status [5] to a private party that purchased notes from the FDIC in its corporate capacity. *Newhart,* 892 F.2d at 48–51. The Eighth Circuit wrote, "[i]f holder in due course status did not run with the notes acquired by the FDIC [and sold to a private party] in purchase and assumption transactions, the market for such notes would be smaller, which would have a deleterious effect on the FDIC's ability to protect the assets of failed banks." *Id.* at 50.

Olney purchased the assets of Petroplex, a failed institution, from the FSLIC. At the same time, Olney assumed certain liabilities of Petroplex. The Acquisition Agreement was entered into on the same date that Petroplex was declared insolvent by the Federal Home Loan Bank Board. This type of asset disposition benefits the FSLIC, Olney, and depositors. *See Wood,* 758 F.2d at 160–61; *Gunter,* 674 F.2d at 865–66. If appellants could successfully assert, as part of an affirmative claim or as a defense, an oral side agreement that tends to diminish the value of an otherwise facially valid instrument acquired by Olney, purchasers would be discouraged from acquiring assets from the FSLIC in the future, and the FSLIC would find it more difficult to protect the assets of failed institutions. *See Bell & Murphy,* 894 F.2d at 754–55; *Newhart,* 892 F.2d at 50. Claims and defenses barred as to the FSLIC by the *D'Oench, Duhme* doctrine are similarly barred as to private parties who purchase the assets of the failed institution from the FSLIC. *See Bell & Murphy,* 894 F.2d at 754–55.

AFFIRMED.

---

**5.** The federal holder in due course doctrine and the *D'Oench, Duhme* doctrine are interrelated and courts' discussions of the two ideas reflect this close relationship. *See Bell & Murphy,* 894 F.2d at 754–55; *Newhart,* 892 F.2d at 48–51; *Murray,* 853 F.2d at 1253–56. Although there are differences between the two concepts, both enhance the FSLIC's ability to protect the assets of failed institutions and the reasoning used by the courts in discussing one of the concepts generally applies to the other. *See Bell & Murphy,* 894 F.2d at 754–55; *Newhart,* 892 F.2d at 49–50; *Murray,* 853 F.2d at 1253–56; *Wood,* 758 F.2d at 159–61.