**Gary THWEATT, Appellant,**

v.

**Cordus JACKSON, Jr., Appellee.**

**No. 3–91–364–CV.**

Court of Appeals of Texas,
Austin.

Aug. 26, 1992.

Rehearing Overruled Sept. 23, 1992.

Jon H. Burrows, Burrows, Baird, Miller & Crews, P.C., Temple, for appellant.

Steven K. Hayes, Busby & Associates, P.C., Temple, for appellee.

Before POWERS, JONES and KIDD, JJ.

## ON MOTION FOR REHEARING

JONES, Justice.

The opinion and judgment issued by this Court on June 3, 1992, are withdrawn, and the following opinion is filed in lieu of the earlier one.

Gary Thweatt, appellant, brought suit against Cordus Jackson, Jr., appellee, on a promissory note executed by Jackson. The trial court rendered summary judgment that Thweatt's suit was barred by the four-year statute of limitations. *See* Tex.Civ. Prac. & Rem.Code Ann. § 16.004 (1986). Thweatt challenges that judgment in a single point of error. We will reverse the trial court's judgment and remand the cause for further proceedings.

## BACKGROUND

The facts are not disputed. On January 4, 1984, Jackson executed a promissory note payable to the order of The People's National Bank of Lampasas. The note matured on May 3, 1984, and Jackson failed to pay the amount due, thereby defaulting on the note.

On April 18, 1985, the Comptroller of the Currency closed People's National Bank and named the Federal Deposit Insurance Corporation ("FDIC") as receiver. As receiver, the FDIC became the holder and owner of Jackson's note. That same date, the FDIC, in its corporate capacity, purchased Jackson's note from the FDIC as receiver.

On December 28, 1988, the FDIC sold Jackson's note to Thweatt. By a letter dated December 13, 1989, Thweatt made a demand on Jackson for payment of the note. Jackson did not pay; therefore, Thweatt filed this suit against Jackson on April 15, 1991.

## DISCUSSION

As the movant for summary judgment, Jackson had the burden of showing that there was no genuine issue of material fact and that he was entitled to summary judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). The facts were not disputed; therefore, we must determine whether, on the basis of those facts, limitations barred Thweatt's suit.

There is no question that the four-year statute of limitations in section 16.004 of the Civil Practice and Remedies Code expired on May 3, 1988, and that Thweatt did not file suit against Jackson until April 15, 1991; therefore, Thweatt's suit is barred if it falls under section 16.004.

In an effort to avoid the effect of section 16.004, Thweatt argues that his cause of action is governed by the following six-year statute of limitations applicable to the FDIC:

(A) Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—

(i) in the case of any contract claim, the longer of—

(I) the 6-year period beginning on the date the claim accrues; or

(II) the period applicable under State law. . . .

(B) For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14) (Supp. I 1989). The FDIC was appointed receiver on April 18, 1985, so the six-year statute of limitations in section 1821 was not scheduled to expire until April 18, 1991. Thweatt filed suit against Jackson on April 15, 1991; therefore, if section 1821 applies to Thweatt's suit, his cause of action is not barred by limitations.

In support of his position that section 1821(d)(14) applies to his suit, Thweatt argues that because he purchased Jackson's note from the FDIC, under federal and state law he became vested with the same rights the FDIC had in the note. He reasons, therefore, that the six-year statute of limitations applicable to the FDIC is also applicable to him as a transferee. We agree.

■ First, although section 1821(d)(14) was not enacted until August 9, 1989 as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, § 212(d)(14), 103 Stat. 183, 232–33 (1989), the federal courts have been virtually unanimous in giving the provision retroactive effect. *See FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 486–87 (9th Cir.1991); *FDIC v. Schoenberger*, 781 F.Supp. 1155, 1158 (E.D.La. 1992); *FDIC v. Thayer Ins. Agency, Inc.*, 780 F.Supp. 745, 748–50 (D.Kan.1991); *FDIC v. BancInsure, Inc.*, 770 F.Supp. 496, 498–99 (D.Minn.1991); *Resolution Trust Corp. v. International Ins. Co.*, 770 F.Supp. 300, 302–04 (E.D.La.1991); *FDIC v. Belli*, 769 F.Supp. 969, 971–73 (S.D.Miss. 1991); *Resolution Trust Corp. v. Interstate Fed. Corp.*, 762 F.Supp. 905, 908–10 (D.Kan.1991); *Resolution Trust Corp. v. Krantz*, 757 F.Supp. 915, 920–22 (N.D.Ill. 1991); *FDIC v. Howse*, 736 F.Supp. 1437, 1445–46 (S.D.Tex.1990). *But see FDIC v. Cherry, Bekaert & Holland*, 742 F.Supp. 612, 615–16 (M.D.Fla.1990) (holding that section 1821(d)(14) should not be applied retroactively). *See also Fust v. Arnar-Stone Laboratories, Inc.*, 736 F.2d 1098, 1100 (5th Cir.1984) (stating that "[s]tatutes of limitation, being procedural and remedial in nature, are generally accorded retroactive effect, unless they are unconstitutionally cast.").[1]

■ Second, it is axiomatic that an assignee of a promissory note stands in the shoes of the assignor and obtains the rights, title, and interest that the assignor had at the time of the assignment. *See Kirby Forest Indus., Inc. v. Dobbs*, 743 S.W.2d 348, 354 (Tex.App.1987, writ de-

---

**1.** We note that even if we were to conclude that section 1821(d)(14) should not be given retroactive effect, our result in the present case would likely be the same. Prior to FIRREA, and pursuant to 28 U.S.C. § 2415(a) (1988) (the general federal six-year statute of limitations), the FDIC had the right to bring a contractual claim for six years from the date it acquired the claim. *See FDIC v. Mmahat*, 907 F.2d 546, 551 n. 5 (5th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1387, 113 L.Ed.2d 444 (1991); *FDIC v. Former Officers & Directors of Metro. Bank*, 884 F.2d 1304, 1306–09 (9th Cir.1989), *cert. denied sub nom. Lee v. FDIC*, 496 U.S. 936, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990); *FDIC v. Hinkson*, 848 F.2d 432, 435 (3d Cir.1988); *FDIC v. Cardona*, 723 F.2d 132, 134 (1st Cir.1983); *Belli*, 769 F.Supp. at 971–73. In the trial court as well as this Court, Thweatt has relied on both section 1821(d)(14) and section 2415(a), under either of which the FDIC had the right to pursue its contractual claim for six years after it acquired the note.

nied); *State Fidelity Mortgage Co. v. Varner*, 740 S.W.2d 477, 480 (Tex.App.1987, writ denied); *Travelers Indem. Co. v. Snyder Nat'l Bank*, 361 S.W.2d 926, 928–29 (Tex.Civ.App.1962, writ ref'd n.r.e.); 6A C.J.S. *Assignments* §§ 73, 88 (1975). Moreover, the assignee of a debt ordinarily obtains all remedies which were available to the assignor against the debtor for the enforcement of the obligation. *See J.W.D., Inc. v. Federal Ins. Co.*, 806 S.W.2d 327, 329 (Tex.App.1991, no writ); 6A C.J.S. *Assignments* § 89 (1975).

■ Therefore, as an assignee of the FDIC, Thweatt obtained the FDIC's claim to the amount due on the Jackson note, as well as the FDIC's right to assert that claim in a court of law. There is no dispute that at the time it assigned the Jackson note to Thweatt, the FDIC had the right to sue Jackson on the note until April 18, 1991, by virtue of the six-year limitations period contained in section 1821. Thus, we conclude that Thweatt stood in the shoes of the FDIC and had the right to assert a claim on the promissory note to the same extent as the FDIC. Because the FDIC had until April 18, 1991, to file suit against Jackson on the note, Thweatt did too. Only one other appellate court in Texas has addressed this issue, and it reached the same conclusion. *See Pineda v. PMI Mortgage Ins. Co.*, No. 13–91–239–CV 1992 WL 111606 (Tex.App.—Corpus Christi, May 27, 1992, n.w.h.) (also holding, in the alternative, that the Texas four-year statute of limitations is tolled when the government acquires the claim).

Our conclusion finds further support in the federal courts. In *Mountain States Financial Resources Corp. v. Agrawal*, 777 F.Supp. 1550, 1552 (W.D.Okla.1991), the defendants in a suit on promissory notes argued that the six-year statute of limitations contained in section 1821 applied only to actions brought by the FDIC, not the FDIC's assignees. In rejecting this argument, the court stated:

> They [the defendants] do not dispute that had the FDIC brought the action, the six-year limitations period would apply. An assignee stands in the shoes of the assignor, and acquires all of the assignors's rights and liabilities in the assignment. This general principle and a strong public policy require that the FDIC's assignee acquire the six-year limitations period provided by § 1821(d)(14)(A).

777 F.Supp. at 1552.

In a closely related setting, the federal courts have allowed assignees to step into the shoes of the FDIC and benefit from its so-called "super-holder-in-due-course" status granted by FIRREA, 12 U.S.C. § 1823(e) (Supp. I 1989). *See Porras v. Petroplex Sav. Ass'n*, 903 F.2d 379, 381 (5th Cir.1990); *FDIC v. Newhart*, 892 F.2d 47, 49–50 (8th Cir.1989). In so holding, the Eighth Circuit in *Newhart* reasoned that a transferee of a note is vested with such rights as the FDIC had therein at the time of the transfer. The court also gave the following public-policy rationale for its conclusion:

> In certain cases, such as the instant one, the FDIC may decide to sell returned assets after bringing suit for collection. Because these assets are usually nonperforming loans, there would be little or no incentive for prospective purchasers to acquire them if they were subject to the personal defenses of the obligors based on undisclosed agreements. If this avenue of cutting losses became unavailable to the FDIC, purchase and assumption transactions would become more expensive and thus, less likely to occur.

*Newhart*, 892 F.2d at 50. By the same token, if assignees of the FDIC were not allowed to benefit from the six-year statute of limitations in FIRREA, the FDIC would be forced to prosecute all notes for which the state statute of limitations had run, because such claims would be worthless to anyone else. Such a result would be contrary to the policy of ridding the federal system of failed bank assets.

## CONCLUSION

Based on our foregoing discussion, we conclude that the six-year statute of limitations contained in section 1821(d)(14) of FIRREA applies to Thweatt's suit; therefore, his cause of action is not barred by limitations. We sustain Thweatt's point of error, reverse the trial court's judgment,

and remand the cause for further proceedings.

POWERS, Justice, dissenting.

The cause of action against Jackson for debt had been time-barred under the Texas statute of limitations for more than a year when 12 U.S.C. § 1821(d)(14) (Supp.1989) became effective August 9, 1989.[1] The majority hold the federal statute revived the cause of action on the following theory: (1) the FDIC's assignment of Jackson's debt carried with it the FDIC's right under § 1821(d)(14) to bring a cause of action within six years; (2) as a statute of limitations, and thus a matter of procedure or remedy, § 1821(d)(14) was susceptible of retroactive application to revive the right of action against Jackson even though it was barred under the Texas statute; and (3) if § 1821(d)(14) did not allow Thweatt six years to sue Jackson, the provisions of 28 U.S.C. § 2415(a) (1988) did have that effect.

Because I disagree with each element of the majority's reasoning, I dissent.

## I

*Did Thweatt acquire by assignment from the FDIC its statutory right to bring a cause of action within the six years specified in § 1821(d)(14)?* Section 1821(d)(14) declares that the "statute of limitations" shall be six years with regard to any action in contract "brought by the Corporation as conservator or receiver." Thus the literal language of § 1821(d)(14) limits its application to "the Corporation" when *it* brings a cause of action "as conservator or receiver." "[T]he Corporation"

is the FDIC, as stated in 12 U.S.C. § 1811 (1989). It may act in its corporate capacity as outlined in 12 U.S.C. § 1819 or in its capacity as receiver or conservator of a depository institution as outlined in 12 U.S.C. § 1821.

Neither the parties nor the majority opinion contend that § 1821(d) is ambiguous in any respect. The literal language of the statute gives absolutely no indication that it was meant to extend to anyone except the FDIC when *it* brings an action *as conservator or receiver* of a depository institution. How then do the majority extend the statute to encompass a case in which a private person sues for his private benefit? The majority opinion sets out two justifications.

Firstly, the majority opinion utilizes a common-law principle. "It is axiomatic that an assignee of a promissory note stands in the shoes of the assignor and obtains the rights, title, and interest that the assignor had at the time of the assignment," including any remedies for enforcement of the obligation. The principle, however, is not complete as stated. The correct idea is that an assignment ordinarily carries with it all rights, remedies, and benefits which are incidental to the thing assigned *except* when a contrary intention appears or *when the right, remedy, or benefit is personal to the assignor and for his benefit alone.* 6A C.J.S. *Assignments* § 76, at 719 (1975). And since the "right" in question is created by statute, the issue necessarily reduces to a question of statutory construction. Did Congress intend the statutory right in § 1821(d)(14) to be personal to the FDIC?[2]

1. The following table summarizes the material events:

   January 4, 1984  Jackson executed and delivered his promissory note payable to The Peoples National Bank.

   May 4, 1984  The bank's cause of action accrued on Jackson's default on the note.

   April 18, 1985  The Comptroller of the Currency appointed the FDIC receiver of the bank. In that capacity, the FDIC assigned the debt and endorsed the note to the FDIC in its corporate capacity.

   May 5, 1988  Any cause of action for Jackson's debt was barred under the Texas statute of limitation found in Tex.Civ.Prac. & Rem. Code Ann. § 16.004 (1986).

   December 28, 1988  FDIC in its corporate capacity assigned the debt and endorsed the note to Thweatt.

   August 9, 1989  The provisions of § 1821(d)(14) were approved and became effective when Congress provided no other effective date.

   April 15, 1991  Thweatt filed his cause of action against Jackson.

2. The various federal district-court opinions cited in the majority opinion assume that the statutory right passes to the FDIC's assignee because he "stands in the shoes" of his assignor, the FDIC. This is not the first time a metaphor has subverted legal reasoning. The metaphor is

Secondly, the majority opinion construes § 1821(d)(14) as giving the statutory right to the FDIC's assignees even though they are not expressly included in the statutory language. The majority give "public policy" as a reason for so extending the scope of the statute by judicial construction—a public policy in favor of maximizing the sums realized by the FDIC when it sells obligations coming into its hands as receiver or conservator of a bank. Unless purchasers acquired the benefit of § 1821(d)(14) they would not purchase any non-performing loans. *See Porras v. Petroplex Sav. Ass'n*, 903 F.2d 379, 381 (5th Cir.1990); *Federal Deposit Ins. Corp. v. Newhart*, 892 F.2d 47, 49–50 (8th Cir.1989).

My views differ considerably in this extension of § 1821(d)(14) to encompass a class of persons and a subject not within the language of the statute. The statute is not ambiguous; no one contends it is. When statutory language is unambiguous there is no room for judicial construction, except in rare and exceptional circumstances not present here. *Freytag v. Commissioner*, — U.S. —, —, 111 S.Ct. 2631, 2635, 115 L.Ed.2d 764, 776 (1991). The absence of any ambiguity in the statute is a reason quite sufficient in my opinion for letting the matter remain as Congress left it. Let us imagine, however, that § 1821(d)(14) *is* ambiguous and therefore subject to judicial interpretation using the familiar rules of statutory construction.

Any such construction must begin with the language of § 1821(d)(14). That language confers a statutory right upon the FDIC alone and reduces the scope of the statute still further by limiting its application to actions brought by the FDIC *as conservator or receiver.* By the clearest possible implication these restrictions deny a congressional intention that the statutory right should extend to the FDIC acting in its corporate capacity or to anyone else who is *not* suing as a receiver or conserva-

tor. Such an important restriction is assumed to have purpose and meaning; it may not simply be ignored or read out of a statute that is part and parcel of a detailed statutory scheme orchestrating all the powers, rights, and duties of the FDIC acting in its capacity as receiver. The present case illustrates the incongruity of a contrary interpretation of the statute.

Congress enacted § 1821(d)(14) for the obvious purpose of giving the FDIC more time to bring any causes of action discovered after it had, *in its capacity as receiver,* taken over the affairs of a financial institution. In the present case, on the same day it was appointed receiver, FDIC–Receiver assigned the debt *not* to Thweatt but to itself in its corporate capacity. FDIC–Corporate in turn assigned the debt to Thweatt. Thweatt could have acquired the statutory right of § 1821(d)(14) only if in each of the two assignments the right passed to the assignee as an incident of the debt. This is, of course, the theory of the majority opinion. But it seems to me doubtful that Congress could have intended that the FDIC might by a stroke of its own pen create for itself in its corporate capacity a statutory right under § 1821(d)(14) that Congress had implicitly denied the agency when acting in that capacity. More pointedly, there is in that statute and the statutory scheme no language indicating a congressional intent that the FDIC's assignee should acquire the statutory right assigned by Congress to the agency alone.

But what of the public policy of maximizing the sums received by FDIC–Receiver in disposing of the debts owed the bank? Does this wise policy not justify extension of § 1821(d)(14) to include a subject and class of persons outside its literal scope? Public policy may be an important element in any exercise of statutory construction. This does not mean, however, that a court

---

a shorthand expression of a common-law principle, as discussed in the text of this opinion. To be operative, the principle requires first a right that is an "incident" of the debt assigned, as would be the case with a right of action for the debt or the terms of a mortgage securing the debt. These federal district-court opinions *assume* the statutory right given under

§ 1821(d)(14) is such an "incident" of the debt owned by the FDIC and assigned to another. I can find no authority for this assumption.

*In the text, however, I discuss what I believe is the proper inquiry in view of the fact that the right asserted is a statutory right—whether Congress intended to limit the right to the FDIC alone.*

may effectuate its own views about that policy and override an unambiguous statute such as § 1821(d)(14). *Freytag,* —— U.S. at ——, 111 S.Ct. at 2635, 115 L.Ed.2d at 776; *Fullinwider v. Southern Pac. R.R.,* 248 U.S. 409, 412, 39 S.Ct. 130, 131, 63 L.Ed. 331 (1918) (public policy may be utilized to resolve ambiguities in a statute, "but it cannot be a substitute for a law"). It is apparent that *Congress* chose to formulate, fix, and effectuate the relevant public policy through the statutory scheme which empowers the FDIC to act as receiver, of which § 1821(d)(14) is only a part. Congress evidently believed the design and phrasing of § 1821(d)(14) sufficient in terms of public policy when orchestrated with all the statutory provisions pertaining to the FDIC acting as receiver.

Statutory language means something. If the statute is insufficient in terms of policy, it is the privilege of *Congress* to amend it. It is not a court's prerogative to add to an unambiguous statute a subject and class of persons not included therein, merely to effectuate the *court's* idea of what would be a wise and expedient addition. *Erskine v. Dyles,* 158 Kan. 788, 150 P.2d 322, 325 (1944) (where statutes of limitation designate only certain classes and subjects as coming within their terms, application of the statutes will be limited accordingly unless there is a *clear manifestation* that the legislature enacted the statutes with a contrary intention). A *court* may not assume Congress was ignorant of the relevant public policy when that body composed the statute in unambiguous terms to work in harmony with a general and complicated scheme intended to implement that very policy through the FDIC as receiver. A *court* may not assume it is wiser, better informed, or more able to formulate and implement the public policy in question. Congress having made *its* choices about implementing *its* decisions regarding the policy, it only remains for the court to enforce the will of Congress expressed in clear and unambiguous terms.

For the foregoing reasons, I would hold that Thweatt did not acquire as an incident of Jackson's debt the statutory right created in § 1821(d)(14).

## II

*Is § 1821(d)(14) actually a "statute of limitations" and therefore procedural in nature so that it may be applied retroactively to revive a cause of action time-barred by a previously applicable statute of limitations?* [3] A statute ordinarily applies prospectively from its effective date, in this case August 9, 1989. An exception exists with respect to procedural statutes or statutes affecting a remedy, such as a statute of limitations. *See Fust v. Arnar-Stone Labs, Inc.,* 736 F.2d 1098, 1100 (5th Cir.1984). On the silent premise that § 1821(d)(14) *is* a statute of limitations, the majority apply it retroactively to revive the cause of action against Jackson even though it had been time-barred by the Texas statute of limitations more than a year before the effective date of the federal statute. I disagree with the premise that § 1821(d)(14) is a true statute of limitations.

The federal statute describes itself as a statute of limitations, but this is not controlling. Its true character depends on its substance. 51 Am.Jur.2d *Limitation of Actions* § 14, at 599 (1970). In its substance, § 1821(d)(14) is not a true statute of limitations.

The purpose of a statute of limitations is to protect *defendants* from the injustice of defending on the merits against claims that may be difficult to defeat owing to the passage of time and an attendant loss of memory and evidence. It lies in the legislative judgment to choose a particular length of time as being commensurate with the likelihood of injustice. The most notable characteristics of a true statute of limitations are that it runs against causes of action, not against persons, and the statu-

---

**3.** In the present case, we are not concerned about the retroactive application of a new statute in the sense of applying it to cases that were pending on the effective date of the statute. Such was the situation in *Federal Deposit Insurance Corp. v. New Hampshire Insurance Co.,* 953

F.2d 478, 486–87 (9th Cir.1991). Nor do we have before us an issue involving an appellate court's duty to apply on appeal a new statute that became effective following the trial-court judgment—another aspect of retroactive application of a statute.

tory period begins to run with the accrual of a cause of action as opposed to some other event. *See generally* Susan C. Randall, *Due Process Challenges to Statutes of Repose*, 40 Sw.L.J. 997, 999–1005 (1986) (distinguishing statutes of limitation from other statutes of repose). In my view § 1821(d)(14) lacks both the purpose and characteristics of a statute of limitations.

The very text of § 1821(d)(14) demonstrates explicitly that its *purpose* is to create a protective right in a *single named plaintiff*—the FDIC—when it brings a cause of action as receiver or conservator. The text does not purport to supplant generally an applicable state statute of limitations; rather it assumes the application and enforcement of such a state statute *unless* it allows the FDIC *less* than six years to bring its cause of action as receiver. This favorable treatment of the FDIC results from two provisions: by allowing a six-year period *unless* the state statute allows a longer period; and by making the period run from the date the FDIC is appointed receiver or from the date a cause of action accrued, whichever is *later*. It is obvious that the FDIC as receiver may in fairness require the additional time when it assumes operation of a bank and makes the myriad of investigations and decisions required in its capacity as receiver. Nevertheless, the obvious purpose of § 1821(d)(14) is to protect a single designated plaintiff, not defendants, and the statutory time limit runs solely against that plaintiff and only incidentally against that plaintiff's causes of action. To the extent the federal statute provides that the time period shall begin running with an event other than the accrual of a cause of action (the date the FDIC is appointed receiver), it lacks as well that essential characteristic of a true statute of limitations.

If § 1821(d)(14) is *not* a true statute of limitations, what is it? Until the FDIC is appointed receiver, it has absolutely *no* right of action at all on any debt owing to the bank. *Federal Deposit Ins. Corp. v. Hinkson*, 848 F.2d 432, 434 (3d Cir.1988). Contemporaneously with its appointment as receiver, however, the FDIC acquires by specific statutory grant the bank's rights of action and all other assets together with

power to operate the bank, transfer its assets, and collect sums due the bank. 12 U.S.C. § 1821(d)(2)(A)(B). It is from these *statutory* provisions that the FDIC acquires a *right of action as receiver*. That is why the following § 1821(d)(14) is limited expressly to actions brought by the FDIC *as receiver*. The various subsections of § 1821(d) are obviously intended to operate in conjunction.

This statutory origin and context of the FDIC's right of action also preclude an interpretation that § 1821(d)(14) is a statute of limitations. It is, rather, a statutory qualification placed by Congress upon the statutory right of action created in the FDIC as receiver. *See* 1 DeWitt Moore, *Wood on Limitations* § 1, at 1–2 (4th ed. 1916); *see also* 51 Am.Jur.2d *Limitation of Actions* § 14, at 599 (1970) ("Statutes of limitation are to be distinguished from statutes which create a cause of action not existing at common law and restrict the time within which such an action may be brought."); 54 C.J.S. *Limitation of Actions* § 7, at 30 (1987) ("[I]f the right is created by statute, the statute of limitations is deemed to be a substantive limit on the right rather than a procedural limit on the remedy.")

For the foregoing reasons, I would hold that § 1821(d)(14) is not a true statute of limitations susceptible of retrospective application from August 9, 1989.

### III

*Should § 1821(d)(14) be applied retroactively even if it is a true statute of limitations?* Even if one should take the view that § 1821(d)(14) is a true statute of limitations, this does not mean that it must be applied retroactively as the majority apply it in the present case. The federal statute is *silent* regarding whether it may or must be given retroactive effect from its effective date of August 9, 1989. Therefore, a presumption arises that it was *not* intended to have a retroactive effect. This is because of a general rule of statutory construction: "Retroactivity is not favored [and] congressional enactments . . . will *not* be construed to have retroactive effect *un-*

less their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) (emphasis added). The same presumption applies to statutes of limitation. Such a statute will not be permitted retrospective effect unless that effect was *clearly intended* by the legislature. Moore, *supra*, at 60. And even when a statute of limitations does indicate clearly that it has retroactive effect, its retroactive application is not unlimited. The statute of limitations "in force at the time the action is brought controls, *unless* the time limited by the old statute for commencing an action has elapsed, while the old statute was in force, and before the suit is brought, *in which case the suit is barred, and no subsequent statute can renew the right or take away the bar." Id.* at 59–60 (emphasis added).

In the present case, it is undisputed that a cause of action brought against Jackson for the debt (the very cause of action brought by Thweatt) was time-barred under the Texas statute before August 9, 1989, the effective date of § 1821(d)(14). The new federal enactment does not provide, clearly or otherwise, that it shall apply retroactively in any respect. Indeed, the limited legislative history considered by any court is that Congress did *not* intend that § 1821(d)(14) operate with retroactive effect. *See Federal Deposit Ins. Corp. v. Cherry Bekaert & Holland*, 742 F.Supp. 612, 616 (M.D.Fla.1990). The statute being silent in the matter, the presumption prevails that Congress did not intend it to have retroactive effect from its effective date of August 9, 1989. Even if one should take a contrary view, however, the retroactive effect cannot extend so far as to renew a cause of action in favor of a private individual when that cause of action was barred by the Texas statute before August 9, 1989.

I would hold, therefore, that § 1821(d)(14) does not remove the bar of the Texas statute in this case even if the former is a true statute of limitations.

## IV

*Does the case come within the general statute of limitations found in 28 U.S.C.* § 2415(a) (1988)? The majority suggest in a footnote that the six-year limitation period of 28 U.S.C. § 2415(a) applies to permit Thweatt's cause of action because that statute preempts the Texas four-year statute of limitations, even if § 1821(d)(14) does not have that effect. I disagree.

Section 2415(a) declares:

(a) Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages *brought by the United States or an officer or agency thereof* which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues ...: *Provided,* ... [an additional ninety days shall be added in the case of actions brought by the United States for a recognized tribe, band or group of American Indians, etc.].

(Emphasis added).

The language of this statute states that it applies to actions for money damages brought by the United States or an officer or agency of the United States. Nothing in the record indicates that the United States is prosecuting an action to recover from Jackson; indeed, the FDIC's assignment to Thweatt was without recourse and the United States appears therefore to lack the necessary interest in the debt to bring an action to recover judgment on it. No one suggests that Thweatt brings the action as an officer or agency of the United States or for its benefit, or that he has been authorized by Congress or the attorney general to do so.

Owing to the explicitness of the language of § 2415(a), Thweatt's action against Jackson can come within its terms only by expanding the statute through judicial construction to include private plaintiffs suing to vindicate their private interests. But the statute is not ambiguous and, under the authorities cited previously, there is no room for a court to expand the statute by construction to include Thweatt's action. Moreover, the face of the statute militates against such a construction. Subparagraph (b) of the statute

**734**

contains express provisions for the United States and its agencies to sue on behalf of American Indians, to recover damages caused by fires on federal lands, to recover money paid under grant programs, and to recover in other particular cases. It would be unreasonable therefore to impute to Congress an intention that other *unnamed* particular cases come within the statute by implication—actions brought by a federal agency's assignee, for example.

The several decisions given as annotations under § 2415(a) indicate that its purpose was to alleviate the unfairness resulting from the common-law rule that the United States was immune from the bar of any state's statute of limitations. Such an immunity is characteristic of all sovereigns—they are not bound by statutes of limitations unless they so consent in a valid statute. In this connection, one court held that a private person to whom the state had transferred a benefit did not become entitled to the state's immunity from the limitations bar. *Brookfield v. Rock Island Improvement Co.*, 205 Ark. 573, 169 S.W.2d 662, 665 (1943). The rule applied to the federal government's assignment of its claims to a private individual. *McCloskey & Co., Inc. v. Wright*, 363 F.Supp. 223, 227 (E.D.Va.1973). This Court has held to the same effect. *See Weaver v. City of Sunset Valley*, 535 S.W.2d 12, 13–14 (Tex.Civ.App. 1976, no writ).

I would hold, therefore, that the present case does not come within the literal and unambiguous terms of § 2415(a) and that it may not come within that statute by judicial construction in the absence of any ambiguity or statutory indication that Congress intended to include within the statute private persons suing to enforce their private interests.

For the foregoing reasons, I would affirm the judgment below.