**TIVOLI VENTURES, INC., Petitioner,**

v.

**Terry D. BUMANN and Douglas Tallman, Respondents.**

**No. 92SC838.**

Supreme Court of Colorado,
En Banc.

March 21, 1994.

Drummond, Dougherty & Schwartz, P.C., Larry C. Schwartz, Pueblo, for petitioner.

John Gehlhausen, P.C., John Gehlhausen, Lamar, for respondent Douglas Tallman.

No appearance on behalf of respondent Terry D. Bumann.

Justice ERICKSON delivered the Opinion of the Court.

We granted certiorari to review *Tivoli Ventures, Inc. v. Tallman,* 852 P.2d 1310 (Colo.App.1992). The issue is whether the statute of limitations set forth in 28 U.S.C. § 2415(a) (1988) is applicable when the Federal Deposit Insurance Corporation (FDIC), acting as receiver for a failed bank, assigns a promissory note to a private party. The district court held that the federal statute of limitations is applicable. The court of appeals reversed and held that a private party is not entitled to sue within the expanded time limit provided by the federal statute of limitations. We disagree, and accordingly reverse the court of appeals and remand with directions to reinstate the judgment entered by the district court.

I

On June 26, 1981, Terry D. Bumann (Bumann) executed a promissory note in favor of the First National Bank of Eads (First National) in the face amount of $5,772. Douglas Tallman (Tallman) signed the note as an accommodation-maker. The note was due on December 28, 1981, but was never paid.

On February 14, 1985, the FDIC was appointed as the receiver of First National. The FDIC assigned Bumann's promissory note to Lease Finance, Inc. (Lease Finance) for value, on January 12, 1987. Pursuant to the assignment agreement, Lease Finance acquired the FDIC's "right, title, and interest" in the note. On August 8, 1989, Lease Finance assigned all of its rights, title, and interest in the note to Tivoli Ventures, Inc. (Tivoli) for value.

Tivoli filed a complaint against Bumann and Tallman on August 17, 1990, seeking the amount due under the note. Bumann and Tallman moved for summary judgment contending that the six-year statute of limitations set forth in section 13–80–103.5(1)(a),

6A C.R.S. (1987), barred Tivoli's claim. The trial court ruled that section 13–80–103.-5(1)(a) did not apply. The trial court concluded that Tivoli, as an assignee of the note, was in the shoes of the assignor and acquired the right to sue within the time period set forth in 28 U.S.C. § 2415(a) (1988), which governs the FDIC.

The court of appeals agreed with the trial court that section 13–80–103.5(1)(a) was not applicable after the FDIC was appointed receiver of the failed bank. *Tivoli Ventures,* 852 P.2d at 1312. Therefore, when the FDIC was appointed receiver, the statute of limitations provided for in 28 U.S.C. § 2415(a) preempted section 13–80–103.-5(1)(a) and a new six-year period began to run. *Tivoli Ventures,* 852 P.2d at 1312. Nevertheless, the court of appeals concluded that when the FDIC assigns a note to a private party, the private party does not acquire the right to sue within the time provided in 28 U.S.C. § 2415(a). *Tivoli Ventures,* 852 P.2d at 1312. The court of appeals based its conclusion on the language of the federal statute and reasoned that the general principles of assignment do not override the statutory language. *Id.* at 1313.

Because the federal statute of limitations applies to private-party assignees of the FDIC, we reverse and remand to the court of appeals with directions to reinstate the judgment entered by the trial court.

## II

Tivoli contends that it was entitled, by virtue of assignment, to all of the right, title, and interest of the FDIC in the promissory note executed by Tallman, including the right to sue within the six-year statute of limitations period set forth in 28 U.S.C. § 2415(a) (1988). We agree.

## A

▮ The Colorado statute of limitations for the enforcement of rights which are set forth in an instrument securing the payment of a debt is six years after the claim for relief accrues. Specifically, section 13–80–103.-5(1)(a), 6A C.R.S. (1987), provides a six-year limitation on:

> All actions to recover a liquidated debt or an unliquidated, determinable amount of money due to the person bringing the action, all actions for the enforcement of rights set forth in any instrument securing the payment of or evidencing debt, and all actions of replevin to recover the possession of personal property encumbered under any instrument securing any debt.

A claim for relief on a promissory note accrues the day after the note matures. *Nagy v. Landau,* 807 P.2d 1227, 1228 (Colo.App. 1990). Thus, under the Colorado statute, the claim for relief on the Bumann note accrued on December 29, 1981, and the state statute of limitations would have expired on December 29, 1987.

The FDIC was appointed receiver of First National on February 14, 1985—before the Colorado statute of limitations had run on the note. The federal statute of limitations for money damages provides:

> Every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract, express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues.

28 U.S.C. § 2415(a) (1988).

▮ The parties do not disagree that under the federal statute the FDIC's claim for relief did not accrue until First National was placed into receivership.[1] The FDIC's claim for relief accrues, however, only if the FDIC acquires the claim before the state statute of limitations expires; that is, the subsequent transfer of the note cannot revive

---

1. The federal circuits are split on whether the FDIC's claim for relief accrues when the note is in default, or when the FDIC is appointed receiver. *Compare FDIC v. Belli,* 981 F.2d 838 (5th Cir.1993) (holding the cause of action accrues when the note matures); *FDIC v. Galloway,* 856 F.2d 112 (10th Cir.1988) (same), *with FDIC v. Former Officers & Directors of Metro. Bank,* 884 F.2d 1304 (9th Cir.1989) (holding that claims accrued under 28 U.S.C. 2415(a) when the FDIC acquired them by assignment), *cert. denied,* 496

a claim already barred under state law. *FDIC v. Wheat,* 970 F.2d 124, 128 n. 7 (5th Cir.1992); *FDIC v. Hinkson,* 848 F.2d 432, 434 (3d Cir.1988). Because the Colorado statute of limitations had not run as of February 14, 1985, when the FDIC's claim for relief accrued, 28 U.S.C. § 2415(a) preempted the state statute of limitations as a result of the FDIC's receivership.[2] Thus, FDIC was not barred from asserting its rights under the federal statute of limitations.

### B

On January 12, 1987, the FDIC assigned to Lease Finance its "right, title and interest" in the Bumann notes which Lease Finance purchased from the FDIC. The subsequent assignment from Lease Finance to Tivoli also transferred the "right, title and interest" in the note. Bumann and Tallman

---

U.S. 936, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990); *FDIC v. Hinkson,* 848 F.2d 432 (3d Cir. 1988) (holding the cause of action accrues when the FDIC acquired the failed bank's assets). Other cases have held that the cause of action accrues under the federal statute when the failed institution is put into receivership. *See FDIC v. Thayer Ins. Agency, Inc.,* 780 F.Supp. 745 (D.Kan.1991); *Mountain States Fin. Resources Corp. v. Agrawal,* 777 F.Supp. 1550 (W.D.Okla. 1991); *FDIC v. Farris,* 738 F.Supp. 444 (W.D.Okla.1989); *FSLIC v. Williams,* 599 F.Supp. 1184 (D.Md.1984); *FDIC v. Buttram,* 590 F.Supp. 251 (N.D.Ala.1984); *Thweatt v. Jackson,* 838 S.W.2d 725 (Tex.App.1992).

In this case, the court of appeals held that the federal statute of limitations began to run when the FDIC became receiver:

Plaintiff contends, however, that when the FDIC assumed receivership in February 14, 1985, the federal statute, 28 U.S.C. § 2415, preempted the Colorado statute of limitations and a *new six year period began to run.* We agree with that portion of the plaintiff's argument.

*Tivoli Ventures, Inc. v. Tallman,* 852 P.2d 1310, 1312 (Colo.App.1922) (emphasis added). We do not address this matter on certiorari, however, because it was not raised by the parties. We assume, for purposes of this opinion only, that the federal statute begins to run when the FDIC becomes receiver and not when the note is in default.

We also note that under 12 U.S.C. § 1821(d)(14) (Supp. I 1989) Congress specifically provided a statute of limitations for actions commenced by the FDIC as a conservator or receiver:

---

contend that because Lease Finance and Tivoli are private parties, they do not receive the benefit of the federal statute of limitations set forth in 28 U.S.C. § 2415(a) and are bound by the state statute of limitations. The result of this contention is that although the FDIC could have recovered the amount of the note, Tivoli is barred from recovery.

Assignment of a note by the FDIC to a private party allows the assignee to proceed under 28 U.S.C. § 2415(a) (1988). The right of a private-party assignee to seek recovery pursuant to the federal statute of limitations has been upheld by nearly every court that has examined the issue. *See FDIC v. Bledsoe,* 989 F.2d 805 (5th Cir.1993) (holding that the federal statute of limitations applies to actions brought by assignees of the failed institutions' receiver); *North Am. Credit Consultants v. Garlick Sales & Service Co.,* No. CIV-91-1066-C, 1992 WL 477016

(A) Notwithstanding any provision of any contract, the applicable statute of limitations with regard to the action brought by the Corporation as conservator or receiver shall be—(i) in the case of any contract claim, the longer of— (I) the 6–year period beginning on the date the claim accrues; or (II) the period applicable under State law....

(B) For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—(i) the date of the appointment of the Corporation as conservator or receiver; or (ii) the date on which the cause of action accrues.

The effective date of § 1821(d)(14) was August 9, 1989. Courts are split on whether this section is retroactive. *Compare Belli,* 981 F.2d at 842 (stating that § 1821(d)(14) is not retroactive) *with FDIC v. New Hampshire Ins. Co.,* 953 F.2d 478, 486–87 (9th Cir.1991) (stating that § 1821(d)(14) applies retroactively). *See also Thweatt,* 838 S.W.2d at 727 (listing cases). We do not address this issue.

2. Accordingly, as of the date the FDIC was appointed receiver, the statute of limitations provided for in 28 U.S.C. § 2415(a) preempted § 13–80–103.5(1)(a), 6A C.R.S. (1987), and a new six-year period began to run. This conclusion is not disputed on appeal and is supported by prior federal cases. *Hinkson,* 848 F.2d at 432; *Thayer Ins. Agency, Inc.,* 780 F.Supp. at 745; *Farris,* 738 F.Supp. at 444.

(W.D.Okla. Oct. 20, 1992) (same); *Fall v. Keasler*, No. C 90 20643 SW, 1991 WL 340182 (N.D.Cal. Dec. 18, 1991) (same); *Mountain States Fin. Resources Corp. v. Agrawal*, 777 F.Supp. 1550 (W.D.Okla.1991) (same); *White v. Moriarty*, 15 Cal.App.4th 1290, 19 Cal.Rptr.2d 200 (1993) (same); *Cadle Co. II, Inc. v. Stamm*, 633 So.2d 45 (Fla.App.1994) (same); *Martin v. Pioneer Title Co.*, No. 96438, 1993 WL 381101 (Idaho Dist. July 8, 1993) (same); *Cadle Co. II, Inc. v. Lewis*, 254 Kan. 158, 864 P.2d 718 (1993) (same); *Central States Resources Corp. v. First Nat. Bank in Morrill, Nebraska*, 243 Neb. 538, 501 N.W.2d 271 (1993) (same); *Cadle Co. v. Matheson*, 870 S.W.2d 548 (Tex. App.1994) (same); *Pineda v. P.M.I. Mortgage Ins. Co.*, 843 S.W.2d 660 (Tex.App.1992) (same); *Thweatt v. Jackson*, 838 S.W.2d 725 (Tex.App.1992) (same), *error granted* (Apr. 7, 1993). *But see Thweatt v. Jackson*, 838 S.W.2d 725 (Tex.App.1992) (Powers, J., dissenting) (stating that 12 U.S.C. § 1821(d)(14) applies only to actions brought by the FDIC, and not to actions brought by its assignees), *error granted* (Apr. 7, 1993); *Federal Debt Management, Inc. v. Weatherly*, 842 S.W.2d 774 (Tex.App.1992), *error granted* (Tex. Apr. 7, 1993) (same).

Subsection 2415(a) applies a six-year statute of limitations for "every action for money damages brought by the United States or an officer or agency thereof." Bumann and Tallman assert that the plain language of the federal statute clearly limits the statute to actions brought by the United States and does not extend to private assignees, much less second assignees.

■ Assignments are not specifically provided for by the terms of subsection 2415(a). The statute is neither ambiguous nor unambiguous; it is silent. Where the federal statute is silent, courts are to fill the statutory gaps by referring to principles of common law. *Bledsoe*, 989 F.2d at 810. Justice Jackson explained:

> The federal courts have no *general* common law.... But this is not to say that wherever we have occasion to decide a federal question which cannot be answered from federal statutes alone we may not resort to all of the source materials of the common law.... Were we bereft of the common law, our federal system would be impotent. This follows from the recognized futility of attempting all-complete statutory codes, and is apparent from the terms of the Constitution itself.... Federal common law implements the federal Constitution and statutes, and is conditioned by them.

*D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 469–72, 62 S.Ct. 676, 685–86, 86 L.Ed. 956 (1942) (Jackson, J., concurring) (emphasis added).

■ Because the statute is silent regarding the application of the federal statute of limitations to assignees, we apply the common law. As a general principle of common law, an assignee stands in the shoes of the assignor. *Bledsoe*, 989 F.2d at 810; *Farmers Acceptance Corp. v. Howard K. DeLozier*, 178 Colo. 291, 294, 496 P.2d 1016, 1017 (1972); *Backus v. Apishapa Land & Cattle Co.*, 44 Colo.App. 59, 61, 615 P.2d 42, 44 (1980). The common law has been extended to encompass private assignees of the FDIC. *Bledsoe*, 989 F.2d at 810; *Porras v. Petroplex Sav. Ass'n*, 903 F.2d 379, 381 (5th Cir.1990); *see also FSLIC v. Cribbs*, 918 F.2d 557, 559 (5th Cir.1990) (stating that the FDIC and subsequent note holders enjoy holder in due course status whether or not they satisfy the technical requirements of state law).

A number of courts have held that an assignee has the same rights as the assignor in determining whether a claim is barred by the statute of limitations. *See Bledsoe*, 989 F.2d at 810; *Fox–Greenwald Sheet Metal Co. v. Markowitz Bros., Inc.*, 452 F.2d 1346, 1357 n. 69 (D.C.Cir.1971); *White*, 19 Cal.Rptr.2d at 200; *Central States Resources*, 501 N.W.2d at 271; *Jon Luce Builder v. First Gibraltar Bank*, 849 S.W.2d 451, 454 (Tex. App.1993); *Pineda*, 843 S.W.2d at 660; *see also* Restatement (Second) of Contracts § 336 cmt. b, illus. 3 (1979). As such, merely because statute of limitations is considered

procedural, *see Industrial Comm'n of Colo. v. Weaver,* 81 Colo. 191, 254 P. 444 (1927); *Weatherly,* 842 S.W.2d at 777, and thus not assignable, it does not preclude a party from taking the place of the assignor and asserting a claim not barred by that particular defense. Because the assignee supplants the assignor, the assignee may initiate an action so long as the assignor is not barred by the relevant statute of limitations.[3]

## C

Applying the federal statute of limitations to an assignee of the FDIC is consistent with the intent and purpose of subsection 2415(a): to allow the FDIC to collect on notes that are owed to insolvent institutions. In *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 459, 62 S.Ct. 676, 680, 86 L.Ed. 956 (1942), the United States Supreme Court stated that the statute which created the FDIC "reveal[s] a federal policy to protect [the FDIC] and the public funds which it administers against misrepresentations as to the ... assets in the portfolios of the banks which [the FDIC] insures or to which it makes loans." In order to promote the policy of discouraging misrepresentation, the Supreme Court held that a secret agreement that deceived, or tended to deceive, creditors or the FDIC could not be raised as a defense when the FDIC sought to enforce a note that it had acquired. *Id.; see also FSLIC v. Murray,*

853 F.2d 1251, 1253–54 (5th Cir.1988). The secret agreement, the Court reasoned, hindered the ability of the government to protect failed institutions' assets. *D'Oench, Duhme,* 315 U.S. at 459, 62 S.Ct. at 680; *see also Gunter v. Hutcheson,* 674 F.2d 862, 865 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). *D'Oench, Duhme* was codified by Congress in 12 U.S.C. § 1823(e) (1988).[4] *See Bledsoe,* 989 F.2d at 811 n. 7.

Courts have also held the "preferred method of ensuring that depositors are paid is through the use of purchase and assumption agreements" which aid the FDIC in protecting depositors and minimizing the institutions' losses.[5] *Porras,* 903 F.2d at 380; *see also FDIC v. Wood,* 758 F.2d 156, 160–61 (6th Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985); *Gunter,* 674 F.2d at 865. Therefore, the extension of the policy enunciated in *D'Oench, Duhme* to private-party assignees of the FDIC is consistent with the federal policy of protecting failed institutions' assets. *See Porras,* 903 F.2d at 381 (stating that assignees of the FSLIC enjoy the protection from claims or defenses based upon oral side agreements); *Bell & Murphy & Assoc., Inc. v. Interfirst Bank Gateway, N.A.,* 894 F.2d 750, 754 (5th Cir.) (stating that assignees of the FDIC are protected against unrecorded side agreements), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990).

---

**3.** If the rights of the note, including the right to institute an action, did not follow the note, an assignor against whom the statute of limitations had run could transfer the note and the obligor would not be able to raise the statute of limitations as a defense against the assignee.

**4.** Although § 1823(e) refers only to the FDIC and not its assignees, courts have interpreted the scope of § 1823(e) to include the FDIC's assignees. *See FDIC v. Newhart,* 892 F.2d 47, 50 (8th Cir.1989) (stating "one of the purposes behind § 1823(e) is to facilitate the purchase and assumption of failed banks as opposed to their liquidation" and that the statutory protections are transferred to assignees because "a contrary result would emasculate the policy behind § 1823(e)" and have a "deleterious effect on the FDIC's ability to protect the assets of failed

banks ... [because] the market for such notes would be smaller").

**5.** In *Porras v. Petroplex Savings Ass'n,* the United States Fifth Circuit Court of Appeals explained:

Purchase and assumption agreements are preferred because they minimize the corporations' losses, expand the purchasing institutions opportunities at low risk, and protect depositors. *D'Oench, Duhme* promotes purchase and assumption transactions by offering the purchaser protection from secret agreements that tend to affect adversely its rights in the instruments that it acquires. Extending *D'Oench, Duhme* to transferees of assets from the FSLIC, therefore, provides the FSLIC with greater opportunity to protect the failed institutions' assets.

*Porras v. Petroplex Savings Ass'n,* 903 F.2d 379, 381 (5th Cir.1990) (citations omitted).

Thus, the application of the federal statute of limitations to private-party assignees of the FDIC implements the intent of Congress:

> To hold that assignees are relegated to the state statute of limitations would serve only to shrink the private market for the assets of failed banks. It would require the FDIC to hold onto and prosecute all notes for which the state statute of limitations has expired because such obligations would be worthless to anyone else. This runs contrary to the policy of allowing the FDIC to rid the federal system of failed bank assets.

*Bledsoe*, 989 F.2d at 811 (quoting *Fall v. Keasler*, No. C 90 20643 SW, 1991 WL 340182 (N.D.Cal. Dec. 18, 1991)). Additionally:

> [I]f assignees of the FDIC were not allowed to benefit from the six-year statute of limitations in [Financial Institutions Reform, Recovery, and Enforcement Act of 1989], the FDIC would be forced to prosecute all notes for which the state statute of limitations had run, because such claims would be worthless to anyone else. Such a result would be contrary to the policy of ridding the federal system of failed bank assets.[6]

*Thweatt*, 838 S.W.2d at 728.

An intent behind subsection 2415(a) is to give the FDIC the power to effectively administer failed financial institutions. The FDIC does not take over a failed bank and operate it in the usual manner. Rather, the FDIC generally acts swiftly in order to sell the assets and liquidate the bank as quickly as possible. Requiring the FDIC to prosecute each outstanding loan would increase the cost and time of the process of liquidation and would unduly delay the transfer and sale of the insolvent bank's assets. Allowing private-party assignees to step into the shoes of the FDIC for purposes of the statute of limitations facilitates expunging the federal system of failed bank assets and is consistent with the intent and language of the federal statute as well as the requirements of the common law.

## III

The vast majority of the cases that address the issue of whether the federal statute of limitations contained in 28 U.S.C. § 2415(a) (1988) applies to private-party assignees of the FDIC hold that the federal statute is applicable. We agree, and accordingly reverse and remand to the court of appeals with directions to reinstate the judgment entered by the district court.

---

**6.** Although *Thweatt* discusses the policy behind 12 U.S.C. § 1821 (1988) (the current statute of limitations governing actions by the FDIC), the general policy reasons behind § 1821 and § 2415(a) are essentially the same; *Thweatt* specifically mentioned that the outcome would be the same under either § 1821(d)(14) or 2415(a). *Thweatt*, 838 S.W.2d at 727 n. 1.