# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00527-CV

---

**Appellants, Hibernia Energy LLC; and Ryan, LLC, as Assignee // Cross Appellants, Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas**

**v.**

**Appellees, Glenn Hegar, Comptroller of Public Accounts of The State of Texas, and Ken Paxton, Attorney General of The State of Texas // Cross Appellees, Hibernia Energy LLC; and Ryan, LLC, as Assignee**

---

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-002649, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Hibernia Energy, LLC and Ryan, LLC appeal from the trial court's final judgment denying their claim for a refund of franchise taxes. *See* Tex. Tax Code § 112.151. Appellants contend that the trial court misconstrued the applicable state and federal tax laws in determining the amount of taxes they owed by including the gains from Hibernia's sale of oil-and-gas-leasehold interests in their "total revenue." *See id.* § 171.1011(c)(2). On cross-appeal, the Comptroller and Attorney General (collectively, the Comptroller) argue that the trial court erred in denying their plea to the jurisdiction. For the following reasons, we affirm the trial court's final judgment.

**BACKGROUND**

Hibernia is a limited liability company that acquired leasehold interests in several oil-and-gas properties shortly after it was formed in 2010. Those interests are central to this dispute. In 2012 and 2014, Hibernia sold its leasehold interests and reported to the Comptroller on its corresponding franchise-tax reports—for tax-report years 2013 and 2015—gains of $95,866,370 and $296,691,853, respectively. The 2013 reported gain was entirely attributable to the sale of some of the interests at issue, and $295,888,093 of the 2015 reported gain was attributable to the sale of the remaining interests. Hibernia arrived at its respective reported gains by subtracting its "simulated cost basis" (i.e., its purchase price, with some adjustments not at issue here) from the gross proceeds received on the sales. Hibernia included these gains in the determination of its total revenue and its corresponding liability for franchise taxes and paid the taxes. *See id.* §§ 171.002 (providing for franchise-tax rate of either 0.75% or 0.375% of taxable margin, as applicable), .101 (providing for determination of entity's taxable margin, of which total revenue is component), .1011 (providing for determination of entity's total revenue).

Thereafter, in late 2015, Hibernia engaged Ryan and authorized it—through a limited power of attorney—to represent it before the Comptroller. Through Ryan, Hibernia filed a request for a total tax refund of $2,749,437.53 for the two tax years at issue (2013 and 2015). *See id.* § 111.104(b) (providing for filing of "tax refund claim"). As support, Hibernia attached to its refund request (a) amended franchise-tax reports for 2013 and 2015, removing the roughly $391 million in gains from the sale of the leasehold interests that it had previously reported, and (b) a "Statement of Grounds" explaining that it had "overstated" its total revenue by erroneously including the gains from its sale of the leasehold interests when such inclusion is purportedly not required under applicable law.

2

Through an informal-review process, the Comptroller disagreed with and disallowed Hibernia's proposed adjustments, *see id.* § 111.1042, and in October 2016 Hibernia requested a formal hearing, *see id.* § 111.105. After the formal hearing before an administrative law judge (ALJ), the Comptroller issued a March 12, 2020 decision adopting the ALJ's recommendation that Hibernia's requested refund be denied. Hibernia timely filed a motion for rehearing, *see id.* § 111.105(c), (d), which the Comptroller denied, and then timely filed this suit, *see id.* § 112.151.

Meanwhile, on December 6, 2017, Hibernia and Ryan executed a "Texas Franchise Tax Refund Purchase Agreement" whereby Hibernia sold to Ryan all of its "right, title, and interest in and to" Hibernia's entitlement to "receive certain franchise tax refunds," estimated at $2,749,437.53, "pursuant to [the] refund claims filed by" Hibernia for tax years 2013 and 2015. Contemporaneously with that agreement, Hibernia executed one of the Comptroller's approved forms—Form 00-985, entitled "Assignment of Right to Refund"—wherein Hibernia ("assignor") assigned to Ryan ("assignee") "all rights and interest to the tax refund[s]" at issue, including the "right to file a request for a refund and to receive the refund."

Hibernia filed its Original Petition and Request for Disclosure in the trial court May 13, 2020. Although the petition identified only Hibernia as a plaintiff, Ryan was listed as the party "[r]espectfully submitti[ng]" the petition, as represented by the listed undersigned counsel. On November 5, 2020, Hibernia and Ryan, "as Assignee," filed a First Amended Petition, identifying Ryan as a plaintiff for the first time. This pleading was again "[r]espectfully submitted" by Ryan, through the same undersigned counsel as the original petition. The Comptroller filed a plea to the jurisdiction, in which it argued that Hibernia lacked standing to bring the suit and that Ryan failed to exhaust its administrative remedies and timely file suit.

3

The trial court denied the plea to the jurisdiction, after which the parties filed cross-motions for summary judgment regarding the merits of appellants' entitlement to a refund. In a final judgment, the trial court granted the Comptroller's motion and denied appellants' motion. The parties each timely perfected appeal—the Comptroller of the denial of its plea to the jurisdiction, and appellants of the final judgment denying their summary-judgment motion and granting the Comptroller's.

## RELEVANT TAXATION SCHEMES

The federal income-tax laws and the Texas franchise-tax laws intersect in this case. For federal-income-tax purposes, the Internal Revenue Code (I.R.C.) treats limited liability companies as partnerships unless they file an election to be treated otherwise. *See* Treas. Reg. § 301.7701–3(b) (providing for default treatment of business entities not classified as corporations). Partnerships are not subject to federal income taxes.[1] *See* I.R.C. § 701 ("Partners, not partnership, subject to tax"). For partnerships, the entity's income is "passed through" to the partners, who then pay federal income taxes based on their allocable shares. *See id.*; *United States v. Woods*, 571 U.S. 31, 38 (2013). While partnerships do not themselves pay federal income taxes, the entities are required to file informational returns—currently, Form 1065, with attendant schedules—which allocate to partners their proportional shares of gains, losses, and other information necessary to calculate and report their individual income-tax liability. *See* I.R.C. § 6031(a) (requiring partnerships to "make a return for each taxable year, stating specifically the items of its gross income and the deductions allowable . . . and such other

---

[1] When referencing the federal income-tax laws and scheme, our use of the term "partnership" in this opinion includes limited liability companies, such as Hibernia, and the term "partners" includes a limited liability company's members; we also note that it is undisputed that Hibernia did not elect to be treated at the federal-tax level as anything other than as a partnership.

4

information . . . the Secretary may by forms and regulations prescribe"); Treas. Reg. § 1.6031(a)–1 ("Return of partnership income"); *Woods*, 571 U.S. at 38; *see also* I.R.C. § 701 (stating that partners "shall be liable for income tax only in their separate or individual capacities").

In contrast, Texas does not tax individuals' income but does tax entities (via the franchise tax) for the privilege of doing business in the state, treating limited liability companies as taxable entities in their own right.[2] *See* Tex. Tax Code §§ 171.001 (imposing franchise tax on each "taxable entity" doing business in state), .0002 (defining "taxable entity" to include limited liability companies). An entity's franchise-tax liability is determined based on amounts "reportable as income" on specific lines of its federal informational tax return. *See id.* § 171.1011(c)(2). Section 171.1011 requires that "the amounts reportable as income" on the specified Form 1065 lines be summed as a first step in computing total revenue. *See id.* § 171.1011(c)(2)(A). While Hibernia reported nothing on its federal tax return on the line at issue here—line 11, Schedule K—the Texas statute requires not what an entity "reports" but, rather, the amounts "report*able*." *See id.* (emphasis added). Line 11 is where a partnership must report "any other item of income" not reported elsewhere on the information return. *See* Department of the Treasury, IRS, 2014 Instructions for Form 1065, at 24, *available at https://www.irs.gov/pub/irs-prior/i1065--2014.pdf* (last accessed Apr. 14, 2023);[3] *see also* Treas. Reg. § 1.6031(a)–1(a)(2) ("The partnership return must contain the information required by the prescribed form and the accompanying instructions.").

---

[2] It is not disputed that Hibernia is subject to the Texas franchise tax.

[3] While new instructions are published each year, the applicable instructions for the two tax years at issue do not differ in any significant respect affecting the issues here; for convenience, we therefore cite the 2014 instructions.

5

Both the federal and state taxation schemes recognize the reality that partnerships and limited liability companies can and do have gains, losses, and income at the entity level. *See, e.g.*, 26 U.S.C. § 703(a) ("The taxable income of a partnership shall be computed in the same manner as in the case of an individual except that—(1) the items described in section 702(a) shall be separately stated, and (2) the following deductions shall not be allowed to the partnership . . . ."); Tex. Tax Code § 171.1011 (specifying items of income to be used in computing taxable margin for entities treated as partnerships at federal level). However, because partnerships are not taxed at the federal level but are liable for Texas franchise taxes, the conceptual dispute in this case asks: How is Hibernia's "pass-through" status under federal law properly converted into "taxable entity" status under Texas law? The specific dispute concerns not whether Hibernia had any gains at the federal level but whether Hibernia was required to report them on line 11, Schedule K of Form 1065 such that they needed to be included in the company's "total revenue" used to compute its franchise-tax liability, and thus whether appellants are entitled to a refund.[4] *See* Tex. Tax Code §§ 171.101, .1011.

## DISCUSSION[5]

### *The Comptroller's Plea to the Jurisdiction*

We first address the Comptroller's assertion on cross-appeal that the trial court erred in denying his plea to the jurisdiction. In two issues, the Comptroller contends that neither

---

[4] The *amount* of refund to which appellants are entitled, if they are entitled, is undisputed; instead, the only issue is *whether* appellants are entitled to a refund as a matter of law.

[5] The standard of review applying to summary judgments—de novo—is well-established and need not be recited here, *see, e.g.*, *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We also note the established rule that conclusions of law, questions of statutory construction, and the trial court's jurisdiction are reviewed de novo. *See Lockheed Martin Corp. v. Hegar*, 601 S.W.3d 769, 774 (Tex. 2020) (statutory construction and conclusions of law); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (jurisdiction).

Hibernia nor Ryan has a right to maintain this tax-refund suit. The Comptroller's arguments as to both appellants hinge on the 2017 assignment and its purported effect on subsequent events and statutory requirements.

As to Hibernia, the Comptroller argues that (1) the company did not satisfy the statutory prerequisite to suit of filing a motion for rehearing (MFR) with the Comptroller, *see id.* § 112.151(a)(2)(A); *see also* Tex. Gov't Code § 311.034 ("Statutory prerequisites to suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."); and (2) the company does not have standing to bring this suit, *see Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). The Comptroller argues that Ryan also did not file an MFR, *see* Tex. Tax Code § 112.151(a)(2)(A), and failed to timely file suit by not being added as a plaintiff until nearly six months after the Comptroller denied Hibernia's MFR, *see id.* § 112.151(c). All these arguments depend on us agreeing with the Comptroller that the 2017 assignment to Ryan of "all rights and interest" to the refund claim extinguished Hibernia's rights under both the Tax Code and the general constitutional principles of standing such that its actions taken in further pursuit of a refund, from that moment forward, were "null and void." But, as explained below, we do not agree with the Comptroller.

Section 112.151 of the Tax Code expressly waives the Comptroller's governmental immunity to allow a tax-refund suit by a person who has (1) filed a tax-refund claim under Section 111.104 and (2) filed an MFR as provided by Section 111.105.[6] *See id.* § 112.151(a). The Comptroller argues that although Hibernia met the first requirement, it did not meet the second because it was not authorized to file an MFR when, upon the 2017 assignment,

_____

[6] The statute also requires the person to have paid any additional tax found due in a jeopardy or deficiency determination for the relevant tax period, but the Comptroller has made no claim of any outstanding taxes due. *See* Tex. Tax Code § 112.151(a)(3).

7

it "ceased" being the "tax refund claimant" referenced in Section 111.105; thus, Hibernia's MFR was purportedly "null and void." *See id.* § 111.105(c) ("A tax refund claimant who is dissatisfied with the decision on the [Section 111.104 tax-refund] claim is entitled to file a motion for rehearing . . . ."). The Comptroller's argument continues: due to the assignment, Ryan became the statutory "tax refund claimant" and was the party required to file an MFR and this lawsuit within the statutory timeframes. Because Ryan failed to do either, the Comptroller's argument concludes, the trial court lacked jurisdiction over this lawsuit.

The Comptroller argues alternatively that Hibernia lacked standing to bring this lawsuit because it no longer had an alleged, concrete injury after it sold to Ryan its rights to any potential refund—thereafter, Hibernia had been "fully compensated" and was "no longer injured." *See Heckman*, 369 S.W.3d at 150 (outlining elements of constitutional standing: (1) concrete injury to plaintiff and (2) real controversy between parties (3) that will be resolved by court); *see also Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 n.9 (Tex. 1993) (noting that standing "is determined at the time suit is filed"). We conclude that each of the Comptroller's arguments—as to standing, the MFR requirement, and the timeliness of the lawsuit—are belied by the common law and the applicable statutory text.

Texas common law has long recognized that when a cause of action is assigned, the assignee may sue either in its name or in the name of its assignor—either way, the trial court has subject-matter jurisdiction, and both the assignor and assignee are deemed to have standing to maintain the action. *See Eagle Supply & Mfg. L.P. v. Landmark Am. Ins.*, 630 S.W.3d 342, 351–52 (Tex. App.—Eastland 2021, pet. denied) (citing *Texas Mach. & Equip. Co. v. Gordon Knox Oil & Expl. Co.*, 442 S.W.2d 315, 317 (Tex. 1969)); *Insurance Network of Tex. v. Kloesel*, 266 S.W.3d 456, 465 (Tex. App.—Corpus Christi–Edinburg 2008, pet. denied); *see also*

*Kerlin v. Sauceda*, 263 S.W.3d 920, 932 (Tex. 2008) (Brister, J. concurring) ("[I]t has long been the rule that an assignee . . . can sue in the name of his assignors . . . ."); *Seiter v. Marschall*, 147 S.W. 226, 228 (Tex. 1912) (citing "repeated holdings of our courts" allowing assignee to prosecute and maintain cause in assignor's name and not be required to become party of record). Furthermore, when a party has initiated a lawsuit in its name but thereafter assigns the rights to the lawsuit's claims to another party, the original party may continue to prosecute the suit to completion in its own name, whether or not the assignee is added or substituted as a party. *See Gordon Knox*, 442 S.W.2d at 316–17. Because an assignee "stands in the shoes" of the assignor, the assignee obtains all the rights, title, and interest that the assignor had at the time of the assignment, including all remedies that were available to the assignor against a debtor for enforcement of the obligation, such as an applicable statute of limitations. *See Thweatt v. Jackson*, 838 S.W.2d 725, 727–28 (Tex. App.—Austin 1992), *aff'd*, 883 S.W.2d 171 (Tex. 1994).

On the basis of this common law, we conclude that although Hibernia assigned to Ryan its rights to the tax-refund claim in the midst of the administrative-review process, Hibernia nonetheless was entitled to both continue prosecuting its tax-refund claim, including the filing of an MFR, in its own name and also subsequently file this tax-refund suit in its own name. *See Gordon Knox*, 442 S.W.2d at 316–17. We see no reason why the common-law rule that an assignor may continue to maintain a pending action after the rights to the claims therein have been assigned should not also apply to pending administrative claims. Furthermore, because Ryan stepped into Hibernia's shoes, all of Hibernia's rights and remedies as to these refund claims were imputed to Ryan, including the timely filing of an MFR as a statutory prerequisite to suit and the timely filing of suit after the Comptroller denied the MFR. *See Thweatt*, 838 S.W.2d at 727–28.

The relevant statutes support this holding because, although they do not define "tax refund claimant," in context the term can only reasonably—and unremarkably—mean a person who has filed a tax-refund claim. Section 111.104 allows only certain persons to file such claim: (1) the person "who directly paid the tax" or (2) that person's attorney, assignee, or other successor. Tex. Tax Code § 111.104(b). It is undisputed, and the record establishes, that Hibernia paid the tax and filed the tax-refund claim, prior to the 2017 assignment—at that juncture, Hibernia was the only party (as between it and Ryan) who *could* have filed a tax-refund claim. *See id*. Thus, Hibernia is the "tax refund claimant" with respect to the tax-refund claims at issue, and it is the statutorily designated party to whom rights related thereto attached. Section 111.105(a) authorizes a "person claiming a refund under Section 111.104" (i.e., tax-refund claimant) to request a formal hearing and, if dissatisfied with the Comptroller's decision thereafter, to file an MFR. *See id.* § 111.105(a), (c). It follows, therefore, that Hibernia is the very "tax refund claimant" authorized to file a motion for rehearing pursuant to Section 111.105 and required to file a tax-refund suit in district court. *See id.* §§ 111.105, 112.151. While post-assignment the common law would have permitted Ryan to usher the refund claim through the administrative process and ultimately file this lawsuit, neither the statutes nor the common law *required* that, and we refuse to hold that Hibernia's common-law rights to maintain and pursue the claim were thereby extinguished, especially when the statutes expressly support its continued rights as the "tax refund claimant."

For the same reasons, we overrule the Comptroller's arguments that Ryan lacks standing to maintain this suit because it did not itself file an MFR or timely file its lawsuit (by being added as a plaintiff too late). Because it "stands in the shoes" of Hibernia, Ryan had the same rights as Hibernia to bring and maintain this suit. Hibernia's actions in relation to the suit

10

are thus imputed to Ryan, and Ryan was properly added as an additional plaintiff through Hibernia's November 2020 filing of its First Amended Petition. *See Detering Co. v. Green*, 989 S.W.2d 479, 480 n.1 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (determining that although original petition was filed by assignor, amended petition listed assignee as plaintiff, and notice of appeal listed only assignor, there was no procedural defect because "assignee may maintain the suit in the assignor's name"); *Thweatt*, 838 S.W.2d at 727–28; *see also Bullock v. Mel Powers Inv. Builder*, 682 S.W.2d 400, 403 (Tex. App.—Austin 1984, no writ) (holding that amendments to pleadings are permissible if jurisdiction has attached to original petition). Furthermore, after the 2017 assignment, Ryan was the real party in interest with the authority to bring and maintain this suit, regardless of the name under which the suit was brought; in fact, the original petition indicated that Ryan was the real party in interest, noting that it was "respectfully submitted" by Ryan. *See Southern Cnty. Mut. Ins. v. Ochoa*, 19 S.W.3d 452, 465 (Tex. App.—Corpus Christi–Edinburg 2000, no pet.) (noting that "whatever name he chooses to sue under, when a cause of action is assigned or transferred, the assignee becomes the real party in interest with the authority to prosecute the suit to judgment").

We hold that the trial court properly denied the Comptroller's plea to the jurisdiction, and we overrule the Comptroller's issues on cross-appeal.

### *Whether Hibernia Is Entitled to a Refund*

Having overruled the Comptroller's issues on cross-appeal, we turn to appellants' sole issue: Was Hibernia required by federal tax law to include on line 11, Schedule K of its Form 1065 its net gains from the sale of the leasehold interests? As explained below, we conclude that (1) the gains were "reportable as income" under federal tax law and that Hibernia

11

thus failed to comply with such law by not reporting them on its Form 1065; (2) Hibernia was required to include the gains in the computation of its total revenue to determine its franchise-tax liability; and (3) the trial court properly rendered judgment denying appellants' claim for a refund.

On its required partnership informational return—Form 1065—a partnership must "specifically" state the "items of [the partnership's] *gross income* and the deductions allowable" as well as "such other information . . . as the Secretary may by forms and regulations prescribe." *See* I.R.C. § 6031(a) (emphasis added); Treas. Reg. § 1.6031(a)–1(a)(1) ("every domestic partnership must file a return of partnership income under section 6031"). "The partnership return must contain the information required by the prescribed form *and the accompanying instructions*." Treas. Reg. § 1.6031(a)–1(a)(2) (emphasis added).

Form 1065, readily available from the IRS's website, includes a section entitled Schedule K: Partners' Distributive Share Items. *See* Department of the Treasury, IRS, Form 1065: U.S. Return of Partnership Income, *available at https://www.irs.gov/pub/irs-pdf/1065.pdf.* Schedule K is divided into sections including "Income (Loss)," "Deductions," and "Credits." Within the "Income (Loss)" section is line 11—the line at issue in this case. *See* Tex. Tax Code § 171.1011(c)(2)(iii). Line 11 is the ultimate line in the section, following lines for the separate entry of other types of income (e.g., ordinary business income, net rental-real-estate income, interest income, and dividends). The instructions for Form 1065, Schedule K, line 11, dictate the partnership to "[e]nter *any other item of income* or loss not included on lines 1 through 10." *See* 2014 Instructions for Form 1065, at 29 (emphasis added).

12

The instructions further prescribe the partnership to "identify the type of income" in the space next to line 11 and describe the type of income using one of several listed "codes." *See id.* at 29–31. The final code in the list is a catch-all:

> Other income (loss) (code F). *Include any other type of income, such as the following*.
>
> • The partner's distributive share of the partnership's gain or loss attributable to the sale or exchange of qualified preferred stock of the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac). On an attached statement, show (a) the gain or loss attributable to the sale or exchange of the qualified preferred stock, (b) the date the stock was acquired by the partnership, and (c) the date the stock was sold or exchanged by the partnership. . . .
>
> • Recoveries of tax benefit items (section 111).
>
> • Gambling gains and losses subject to the limitations in section 165(d). Indicate on an attached statement whether or not the partnership is in the trade or business of gambling.
>
> • *Disposition of an interest in oil, gas, geothermal, or other mineral properties*. Report the following information on an attached statement to Schedule K-1: (a) Description of the property; (b) The partner's share of the amount realized on the sale, exchange, or involuntary conversion of each property (fair market value of the property for any other disposition, such as a distribution); (c) *The partner's share of the partnership's adjusted basis in the property (except for oil and gas properties)*; and (d) Total intangible drilling costs, development costs, and mining exploration costs (section 59(e) expenditures) passed through to the partner for the property. See Regulations section 1.1254–5 for more information.
>
> • Gains from the disposition of farm recapture property . . . .
>
> • Any income, gain, or loss to the partnership under section 751(b).
>
> • Specially allocated ordinary gain (loss).
>
> • Any gain or loss from lines 7 or 15 of Schedule D that is not portfolio income . . . .
>
> • Any cancellation of debt income previously deferred as a result of a section 108(i) election that is includible in the current year. . . .
>
> • [And other described gains.]

13

*Id.* at 30 (emphases added). Notably, these instructions *twice* mandate the partnership to list on Schedule K "any other" item or type of income not otherwise disclosed on Form 1065. And the instructions explain the "purpose" of Schedules K and K-1 and *twice* indicate that Schedule K is used to report *partnership income*, even though the partnership itself does not pay tax:

> Although the partnership is not subject to income tax, the partners are liable for tax on their shares *of the partnership income*, whether or not distributed, and must include their shares on their tax returns.
>
> **Schedule K.** Schedule K is a summary schedule of all the partners' shares *of the partnership's income*, credits, deductions, etc. All partnerships must complete Schedule K. Rental activity income (loss) and portfolio income are not reported on page 1 of Form 1065. These amounts are not combined with trade or business activity income (loss). Schedule K is used to report the totals of these and other amounts.
>
> **Schedule K-1.** Schedule K-1 shows each partner's separate share. Attach a copy of each Schedule K-1 to the Form 1065 filed with the IRS. . . .

*Id.* at 24 (emphases added).

I.R.C. Section 6031's requirement that a partnership "specifically" state the items of its "gross income" aligns with the wide net the I.R.C. casts in defining "gross income"—the term broadly means "all income from whatever source derived, including . . . [g]ains derived from dealings in property . . . ." *See* I.R.C. § 61(a). A gain from the sale or disposition of property is "the excess of the amount realized therefrom over the adjusted basis . . . ." *Id.* § 1001(a). The "amount realized" from a property sale is the "sum of any money received plus the fair market value of the property (other than money) received." *Id.* § 1001(b). The I.R.C. further specifies that gains from the disposition of an interest in oil, gas, geothermal, or other mineral properties constitute income. *See id.* § 1254 ("[I]n the case of . . . a sale [of such

14

property]," "the excess of . . . the amount realized . . . over the adjusted basis . . . shall be treated as gain which is ordinary income.").

The "adjusted basis" with respect to computing gains from the sale of property is the cost of such property, adjusted to the extent allowable by law. *See id.* §§ 1011, 1012(a), 1016, 1254. Common adjustments to basis include expenditures "properly chargeable" to a capital account and allowable deductions for wear and tear, amortization, and depletion of an asset. *See id.* § 1016(a)(1), (2). However, a partnership is not allowed to take a depletion deduction with respect to oil and gas wells and thus may not adjust its basis therefor. *See id.* §§ 703(a)(2)(F), 1016(a)(2)(A).

In contrast, with respect to oil and gas wells a partnership may deduct what are known as intangible drilling and development costs (IDCs). *See id.* § 263(c); Treas. Reg. § 1.612–4(a) (explaining that IDCs include "wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas"). The general rule applying to capital improvements to property is that they may not be fully deducted in the year incurred but must be amortized over time, resulting in authorized adjustments (additions) to the owner's basis in the property. *See* I.R.C. § 1016(a)(1); Treas. Reg. § 1.263(a)–(1)(a)(1). For IDCs, however, Congress has given partnerships the option to fully deduct them in the year they are incurred, *see* I.R.C. § 263(c); Treas. Reg. § 1.612–4, and the exercise of such option precludes any corresponding basis adjustment *as to the partnership*, *see* I.R.C. § 1016(a)(1); Treas. Reg. § 1.263(a)–(1)(a)(1); *see also* I.R.C. §§ 614 (defining type of property constituting mines, wells, and natural deposits), 1254(a)(1), (3) (referencing expenditures that have been deducted under Section 263 (i.e., for IDCs) and "which, but for such deduction, would have been included in the adjusted basis of such property" in defining Section

15

1254 property (which references Section 614 in its definition)). The evidence establishes that Hibernia elected to take the full deduction for its IDCs in the year they were incurred and thus was not entitled to adjust its basis therefor.[7]

Hibernia advances two main arguments for why its gains on the leasehold sales were not "reportable as income" on line 11: (1) the Form 1065 instructions expressly exclude the gains on the disposition of an interest in oil or gas properties because the applicable bullet point states merely "disposition of an interest" rather than "gains (loss) from the disposition of an interest," and (2) a partnership cannot determine its "gain" from the disposition of an interest in oil or gas properties because adjustments to basis are only tracked and made at the partner level, which depends on varying characteristics and elections made by the partners that are unknown to the partnership.

As to Hibernia's first argument, we simply cannot agree with Hibernia that—in the midst of a non-exhaustive list of "any other type of income"—the Treasury Department (in drafting its statutorily mandated forms and instructions) intended to convey that gains (or losses) from the disposition of an interest in oil-and-gas properties need *not* be reported simply because the relevant bullet point states "disposition of an interest" rather than "*gains (losses) from the disposition of an interest.*" Hibernia's proposed construction of the instructions runs counter to (1) the I.R.C.'s express requirement that a partnership report *all* items of its gross income, *see* I.R.C. § 6031(a); (2) the I.R.C.'s expansive definition of gross income, *see id.* § 61(a); and

---

[7] Nonetheless, the individual partners on their tax returns may either (a) fully deduct their share of the partnership's IDCs in the year incurred, as did the partnership; or (b) disregard the partnership's election and instead amortize their share of the partnership's IDCs over time pursuant to the default rule for capital expenditures. *See* I.R.C. § 59(e). If a partner chooses the latter, it must correspondingly adjust its share of basis in the property by the portion of its share of IDCs that it did not deduct in the year incurred. *See id.* § 1016(a)(1).

16

(3) the instructions' *twice* mandating a partnership to include on line 11 "any other" item or type of income, *see* 2014 Instructions for Form 1065 at 24, 29. We must construe the instructions here in their context, *see* Tex. Gov't Code § 311.011(a), and we must avoid hyper-technical readings of isolated words or phrases, *see Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004), or a construction that would render a law or provision meaningless or absurd, *see Chevron Corp. v. Redmon,* 745 S.W.2d 314, 316 (Tex. 1987); *see also Southwest Airlines Co. v. Bullock*, 784 S.W.2d 563, 570–71 (Tex. App.—Austin 1990, no writ) (noting that courts are to construe administrative rules and regulations in same manner as statutes). If the Treasury Department intended to exclude a type of gross income from the reporting requirement—assuming the Treasury Department has the authority to do so, despite the I.R.C.'s mandate that partnerships report all "gross income"—it would constrain logic and common sense for it do so in the middle of a list of types of income that *must* be reported. And, as explained above, there can be no reasonable contention that the gains from the disposition of oil-and-gas properties do not constitute income under the I.R.C.

Hibernia's second argument—that it could *not* calculate its gains because basis is tracked at only the partner level—is belied by the undisputed evidence that Hibernia *did* calculate its gains on its original franchise-tax reports and the above discussion clarifying that a partnership may not make adjustments to its basis for depletion or for IDCs if it has elected to fully deduct the IDCs in the year incurred (as Hibernia did). Because those basis adjustments

17

were unavailable to Hibernia, its gains on the leasehold sales were simply its cost to purchase them less the amount realized on the sale.[8] *See* I.R.C. § 1001.

We overrule appellants' sole issue and hold that Hibernia was required to report its gains from the sale of the at-issue leasehold interests on line 11, Schedule K, of its Form 1065 and thus include those gains in its determination of total revenue for Texas franchise-tax purposes. Accordingly, appellants were not entitled to a refund of the franchise taxes Hibernia paid, and the trial court did not err in denying appellants' refund claim.

## CONCLUSION

Having overruled appellants' and appellees' issues, we affirm the trial court's final judgment.

_____
Thomas J. Baker, Justice

Before Justices Baker, Triana, and Theofanis

Affirmed

Filed: April 21, 2023

---

[8] Hibernia did make a few allowable adjustments to its reported gains—for instance, it subtracted from the sales proceeds the selling costs it incurred—but those adjustments are not relevant to the issues on appeal, and neither party takes issue with them.